LEILA ORTIZ GARCÍA, peticionaria, *v.* HÉCTOR MELÉNDEZ LUGO, recurrido.

*Número:* CC-2004-648 *Resuelto:* 3 de marzo de 2005

*Harold J. Rivera Vázquez*, abogado de la parte peticionaria; *Manuel Moraza Choisne*, abogado de la parte recurrida.

LA JUEZA ASOCIADA SEÑORA FIOL MATTA emitió la opinión del Tribunal.

La peticionaria, Leila Ortiz García, nos solicita que revoquemos una sentencia enmendada dictada el 8 de junio de 2004 por el Tribunal de Apelaciones. En ésta, el foro apelativo intermedio dispuso que la Dra. Bertis Delgado, psicóloga del hijo de la peticionaria y el recurrido, era la llamada a decidir si habría de testificar en el juicio en su fondo donde se adjudicaría la custodia del menor. De esta forma, el Tribunal de Apelaciones revocó la resolución que dictó el foro de instancia en que se decidió no permitir que la psicóloga del menor testificara porque lesionaría la relación confidencial entre el niño y su terapeuta. Luego de examinar con detenimiento el expediente y el derecho aplicable, hemos decidido expedir el auto solicitado para determinar finalmente si se debe admitir el testimonio del terapeuta que ha brindado tratamiento de forma privada a un menor en un pleito en el cual sus padres se disputan la custodia.

I

La peticionaria, Leila Ortiz García, y el recurrido, Héctor Meléndez Lugo, sostuvieron una relación consensual durante la cual procrearon a D.A., un niño que actual-

mente cuenta con siete años de edad. Las partes comenzaron a convivir en agosto de 1997 en una propiedad privativa del recurrido, sita en la Urbanización Versalles, Calle 1A-15 en Bayamón. Un mes después, el 9 de septiembre de 1997, nació el menor cuya custodia está en controversia. La señora Ortiz y el señor Meléndez nunca contrajeron nupcias. Ambos cuentan con estudios post graduados. La peticionaria posee una maestría, mientras que el recurrido tiene un grado doctoral. La peticionaria tiene otros dos hijos mayores de edad producto de una relación previa; en cambio, D.A. es el único hijo del recurrido.

El presente litigio tiene su génesis en una intensa batalla jurídica, la cual debemos relatar brevemente para el mejor entendimiento de la naturaleza no sólo procesal, sino humana de esta controversia.

El 28 de febrero de 2001 el Tribunal de Primera Instancia emitió una orden de protección al amparo de la Ley Núm. 54 de 15 de agosto de 1989, según enmendada, 8 L.P.R.A. sec. 601 *et seq.* (Ley 54), en contra del recurrido. A consecuencia de esa orden, el señor Meléndez fue desalojado de la residencia de su propiedad que ocupaba con la señora Ortiz García, los hijos de ésta y el hijo de ambos, D.A. Debemos destacar que el 11 de mayo de 2001 el foro de instancia determinó que no había causa probable para someter la acusación en contra del señor Meléndez por violación a la Ley 54.

Entretanto, el 6 de marzo de 2001, la señora Ortiz García presentó una demanda en la que solicitó que se le reconociera a ella y a su hijo menor de edad el derecho a hogar seguro sobre la residencia que hasta entonces ocupaban. También solicitó que se prohibiera al señor Meléndez Lugo visitar o entrar a esta residencia, amparándose en la referida orden de protección, para lo cual, como ya señalamos, el tribunal no encontró causa probable. Por último, la señora Ortiz García pidió al tribunal que fijara una pensión alimentaria y dispusiera sobre las relaciones paterno-

filiales. El 18 de mayo de 2001 el señor Meléndez Lugo contestó la demanda y reconvino, solicitando la custodia y patria potestad sobre su hijo. Además, solicitó que se ordenara el desalojo de la peticionaria de la casa donde residía con sus dos hijos mayores de edad y el hijo de ambos.

Luego de varios trámites procesales que incluyeron la intervención del Tribunal de Apelaciones, el foro de instancia concluyó que la residencia sita en la Urbanización Versalles era privativa del recurrido y que la señora Ortiz García no podía reclamar sobre ésta el derecho a hogar seguro que dispone el Art. 109-A del Código Civil, 31 L.P.R.A. sec. 385a. Eventualmente, ordenó a la peticionaria que desalojara la propiedad, so pena de sanciones. Quedó pendiente la adjudicación de la custodia del menor, que es lo que nos concierne en el presente recurso.

Antes de disponer sobre la custodia permanente, el Tribunal de Primera Instancia ordenó a la Unidad de Trabajo Social que llevara a cabo estudios sociales y psicológicos del menor. La trabajadora social, Sra. Wanda Bravo, y la psicóloga clínica, Dra. Glori Mari Hamilton, los entrevistaron y evaluaron. En su informe, la doctora Hamilton señaló que el menor está afectado emocionalmente por la separación de sus padres, por lo que recomendó que se le brindara atención psicológica y apoyo emocional.

La selección del psicólogo que atendería al menor resultó ser tan conflictiva como los incidentes anteriores. En moción urgente presentada ante el foro de instancia el 20 de febrero de 2002, el recurrido solicitó autorización para que la Dra. Jeannette Rosselló brindara tratamiento al menor. La peticionaria se opuso. Adujo que la doctora Rosselló era compañera de trabajo del señor Meléndez, ya que ambos eran catedráticos de la Universidad de Puerto Rico.(¹) En su lugar, recomendó a la doctora Hamilton como

---

(¹) Respecto a esta moción, el tribunal expresó: "Recomendamos a los abogados a orientar a sus clientes para que mejore su comunicación para el mejor bienestar del menor." Apéndice de la Petición de *certiorari*, pág. 75.

terapeuta para el menor. Por su parte, el recurrido se opuso a la designación de la doctora Hamilton. Alegó que como ésta había evaluado al menor como perito del tribunal, "le está prohibido por los cánones de ética de su profesión servir como terapista del niño". Para poner fin a esta disputa, el foro de instancia le dio un plazo de veinte días a las partes "para escoger el profesional que se requiera para brindar servicio al menor". En su orden expresó que era "lamentable que las partes est[é]n tan distanciadas ...". Finalmente, las partes acordaron utilizar los servicios profesionales de la Dra. Bertis Delgado. El 16 de julio de 2002 inició el proceso terapéutico en el cual han estado involucrados no sólo el menor, sino ambos padres.

El 15 de diciembre de 2003, las partes presentaron el Informe sobre Conferencia Preliminar entre Abogados, en el cual la peticionaria anunció a la doctora Delgado como testigo pericial. El señor Meléndez se opuso. Argumentó que el testimonio de la doctora Delgado podría afectar la salud emocional del menor al vulnerarse la relación de confianza con su terapeuta. Adujo que la doctora Delgado debía permanecer como figura neutral para proteger el mejor bienestar del menor. El Tribunal de Primera Instancia acogió la solicitud del padre y, mediante Resolución de 6 de febrero de 2004, excluyó el testimonio de la Dra. Bertis Delgado "por entender y determinar que su testimonio en el juicio lesionaría la relación confidencial y confianza existente entre la doctora y [el] paciente-menor". Apéndice de la Petición de *certiorari*, pág. 101.

La señora Ortiz García cuestionó esta decisión ante el Tribunal de Apelaciones. Ante la premura de una solicitud de auxilio para paralizar el juicio en el foro de instancia, el Tribunal de Apelaciones dictó sentencia el 29 de abril de 2004 en la cual revocó la resolución recurrida para permitir que la doctora Delgado declarara como testigo en el juicio. Posteriormente, en reconsideración, el foro apelativo intermedio modificó su dictamen y resolvió que la doctora

Delgado debía decidir si, en el balance de todas las consideraciones, su testimonio como testigo pericial redundaría en beneficio del mejor interés del menor.([2]) En específico, señaló:

> [M]odificamos nuestro anterior dictamen para resolver que el testimonio de la Dra. Bertis Delgado será imprescindible para el tribunal y entonces habrá que tomar las medidas cautelares para que la relación de confianza que el menor tiene con su terapeuta no se afecte y éste continúe recibiendo sus servicios mientras sean necesarios, independientemente a quien corresponda la custodia, *siempre y cuando* la Dra. Delgado concluya que prestar su testimonio pericial ante el Tribunal resulte más beneficioso o favorable al mejor interés del menor, que el no hacerlo. ...
>
> De optar la Dra. Delgado por no participar como perito en la causa, fundamentado ello en lo ya señalado, se le excluirá totalmente. (Énfasis en el original.) Apéndice de la Petición de *certiorari*, págs. 350–351.

En respuesta a esta sentencia enmendada, el 15 de junio de 2004 la doctora Delgado les envió una carta a los abogados de las partes. En ésta explicó que no comparecería a testificar para no violentar la relación de confianza establecida con el menor y sus padres, quienes participaban en las terapias para el tratamiento de su hijo.

El 20 de julio de 2004 la señora Ortiz García presentó ante este Tribunal una solicitud de *certiorari*, y señaló como único error el siguiente:

> Erró el Honorable Tribunal de Apelaciones al dejar en manos de una testigo en el caso, la Dra. Bertis Delgado, la determinación de si testifica o no en el proceso, delegando así en dicha testigo el poder de "parens patriae" que tienen los tribunales para resolver controversias relacionadas a custodia y otras de los menores, esto a pesar de reconocer, y no ser controversia al

---

([2]) El juez Urgell Cuevas emitió un voto disidente. Manifestó que, a su parecer, si se permitía el testimonio de la doctora Delgado, a quien se afectaría sería al menor, ya que se "menoscabaría y debilitaría la confianza depositada por ambos padres", quienes han participado en su tratamiento. También apuntó que en el caso hay otros peritos capacitados para ilustrar al tribunal. Apéndice de la Petición de *certiorari*, pág. 353.

presente, la gran importancia que tiene su testimonio a la hora de determinar la adjudicación de custodia del menor [D.A.] Meléndez Ortiz. Petición de *certiorari*, pág. 4.

El 28 de julio de 2004 paralizamos el juicio y ordenamos al señor Meléndez Lugo mostrar causa por la cual no debíamos revocar la sentencia enmendada del Tribunal de Apelaciones. En su comparecencia para oponerse a la expedición del *certiorari*, el señor Meléndez Lugo alega que permitir el testimonio de la doctora Delgado iría en contra del mejor bienestar del menor, ya que "el menor ha logrado comunicación efectiva y positiva con su terapista, la cual se perdería en la medida en que uno de los padres o ambos le retiren su confianza". Oposición a *certiorari*, pág. 16. Además, señala que solicitar a la psicoterapeuta que testifique la coloca en un "grave conflicto ético".

▇ Hemos evaluado con gran detenimiento el expediente de autos y el derecho aplicable, y resolvemos que debemos revocar el dictamen recurrido, pero no para favorecer la posición de la peticionaria, sino para confirmar la decisión del foro de instancia que prohíbe el testimonio de la doctora Delgado. A su vez pautamos, como norma general, que un psicoterapeuta que ofrece tratamiento a un menor cuya custodia está en disputa está impedido de testificar en el pleito de custodia, en virtud de la política pública de protección al mejor bienestar de los menores y porque la comunicación entre el psicoterapeuta y el menor es privilegiada, de acuerdo con las reglas de evidencia vigentes.

## II

▇ A. *La política de protección a los mejores intereses y el bienestar del menor*

La decisión de un tribunal en torno a la custodia de un menor "es una a la que [se] debe llegar [luego] de realizar un análisis objetivo, sereno y cuidadoso de todas las circunstancias presentes en el caso ... ante su consideración[,]

teniendo *como único y principal objetivo el bienestar de los menores*". (Énfasis suplido.) *Santana Medrano v. Acevedo Osorio*, 116 D.P.R. 298, 301 (1985). Ello, a partir del Art. 107 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 383, que dispone, en su parte pertinente, como sigue:

> En todos los casos de divorcio los hijos menores serán puestos bajo el cuidado y la patria potestad del cónyuge que el Tribunal, en el ejercicio de su sana discreción, considere que los mejores intereses y bienestar del menor quedarán mejor servidos ....

La determinación de cuáles son los mejores intereses del menor está enmarcada en el derecho que éste tiene a una correcta formación física, moral y espiritual. *Nudelman v. Ferrer Bolívar*, 107 D.P.R. 495, 511 (1978). Para poder determinar que un dictamen judicial redundará en el mayor bienestar del menor es preciso examinar el siguiente listado no taxativo:

> [L]a preferencia del menor, su sexo, edad y salud mental y física; el cariño que puede brindársele por las partes en controversia; la habilidad de las partes para satisfacer debidamente las necesidades afectivas, morales y económicas del menor; el grado de ajuste del menor al hogar, la escuela y la comunidad en que vive; la interrelación del menor con las partes, sus hermanos y otros miembros de la familia; y la salud psíquica de todas las partes. *Marrero Reyes v. García Ramírez*, 105 D.P.R. 90, 105 (1976).

■ El principio de protección a los mejores intereses y el bienestar del menor delimitan los contornos del poder discrecional del tribunal en este caso. En efecto, el poder para adjudicar la custodia que se establece en el Art. 107 del Código Civil, *supra*, tiene su génesis en el ejercicio del poder de *parens patriae* que hacen los tribunales, es decir, en el reconocido poder del Estado de proteger a los incapaces. El poder de *parens patriae* limita los derechos de otras partes, a fin de salvaguardar el bienestar de quien no puede abogar por los suyos. Es la función social y legal que el Estado asume y ejerce para cumplir con su deber de

brindar protección a los sectores más débiles de la sociedad. *Es por eso que cualquier conflicto que un tribunal perciba entre intereses ajenos y el mejor interés de un menor se debe resolver a favor del menor.*

■ B. *El privilegio médico-paciente en Puerto Rico*

Los privilegios reconocidos en nuestro derecho probatorio operan como reglas de exclusión de evidencia. Explica el Prof. Ernesto L. Chiesa que, como tales, su fundamento

> ... es totalmente independiente, y de ordinario antagónico, de la búsqueda y consecución de la verdad, propósito cardinal del derecho probatorio. Se excluye materia privilegiada por consideraciones de política pública, para adelantar valores o intereses sociales ajenos o antagónicos a la búsqueda de la verdad, tan fundamental para la más justa adjudicación de las controversias judiciales. (Escolios omitidos.) E.L. Chiesa, *Tratado de derecho probatorio: Reglas de Evidencia de Puerto Rico y federales*, República Dominicana, Ed. Corripio, 1998, T. I, págs. 185–186.

■ Siendo ésta la consecuencia de los privilegios, su aceptación requiere que se cumplan cuatro condiciones fundamentales:

> ... 1) la comunicación tiene que haberse originado en la confianza de que no será divulgada; 2) este elemento de confidencialidad tiene que ser esencial para mantener plena y satisfactoriamente la relación entre las partes; 3) la relación debe ser una que la comunidad considere que debe ser diligentemente promovida[,] y 4) que el perjuicio que causaría la divulgación de la comunicación sea mayor que el beneficio obtenido por la correcta disposición del pleito. *García Negrón v. Tribunal Superior*, 104 D.P.R. 727, 734 (1976).

■ Además, como la exclusión de prueba basada en los privilegios responde a la "confidencialidad ... para proteger al titular del derecho", no los puede invocar *"cualquier persona o parte en el pleito"*. (Énfasis suplido.) Chiesa, *op. cit.*, pág. 185.

■ En torno al privilegio médico-paciente, la Regla 26(B) de Evidencia, 32 L.P.R.A. Ap. IV, dispone como sigue:

(B) Sujeto a lo dispuesto en esta regla, el paciente, sea o no parte en el pleito o acción, tiene el privilegio de rehusar revelar, y de impedir que otro revele, una comunicación confidencial entre el paciente y el médico si el paciente o el médico razonablemente creían que la comunicación era necesaria para permitir al médico diagnosticar o ayudarle en un diagnóstico de la condición del paciente o para prescribir o dar tratamiento a la misma. *El privilegio puede ser invocado no sólo por su poseedor, el paciente, sino también por una persona autorizada para invocarlo en beneficio del paciente, o por el médico a quien se hizo la comunicación confidencial, si éste lo invoca a nombre de y para beneficio del paciente.* (Énfasis suplido.)

▆▆▆▆▆ Para comprender cabalmente el alcance de esta regla es preciso estudiar varias definiciones. La primera se encuentra en la Regla 26(A)(1) de Evidencia, que incluye en la definición de médico al "sicoterapista ya sea éste siquiatra o sicólogo". 32 L.P.R.A. Ap. IV. Según la misma regla, el paciente es aquella persona "que con el único fin de obtener tratamiento médico, o un diagnóstico preliminar a dicho tratamiento, consulta a un médico o se somete a examen por éste". 32 L.P.R.A. Ap. IV. Por otra parte, la regla también define la *comunicación confidencial* como aquella "habida entre el médico y el paciente en relación con alguna gestión profesional basada en la confianza de que ésta no será divulgada a terceras personas, salvo a aquellas que sea necesario para llevar a efecto el propósito de la comunicación". 32 L.P.R.A. Ap. IV.

El privilegio médico-paciente está sujeto a diez excepciones enumeradas en la Regla 26(C) de Evidencia.([3]) Nin-

---

([3]) No existe privilegio bajo esta regla si:

"(1) La cuestión en controversia concierne la condición del paciente, bien en una acción para recluirle o ponerle bajo custodia por razón de alegada incapacidad mental o en una acción en la que el paciente trata de establecer su capacidad, o en una acción de daños a base de la conducta del paciente que constituye delito.

"(2) *Los servicios del médico fueron solicitados u obtenidos para hacer posible o ayudar a cometer o planear la comisión de un delito o de un acto torticero.*

"(3) El procedimiento es de naturaleza criminal.

"(4) El procedimiento es una acción civil para recobrar daños con motivo de conducta del paciente y se demuestra justa causa para revelar la comunicación.

guna de estas excepciones está presente en este caso. Sin embargo, como antesala a nuestra discusión ulterior, resulta pertinente señalar que la décima excepción dispone que no estará protegida la comunicación cuando ésta "es pertinente a una controversia relacionada con un *examen médico ordenado por el tribunal* a un paciente, sea el paciente parte o testigo en el pleito". (Énfasis suplido.) 32 L.P.R.A. Ap. IV, R. 26(C)(10).

■ Por último, debemos tomar en consideración que

[e]l procedimiento judicial tiene el propósito de llegar a la verdad y en consecuencia no debe excluirse la ventilación de hechos esenciales, *a menos que con ello se vindique un interés superior de la sociedad o de la persona.* Son muy contados los casos en el que el privilegio de médico y paciente puede vindicar un interés superior a la dilucidación de la verdad en un proceso judicial. (Énfasis suplido.) *García Negrón v. Tribunal Superior*, supra, pág. 732.

Hemos señalado que cuando los casos involucran problemas psiquiátricos, la confidencialidad es necesaria para motivar una relación franca entre el médico y el paciente. *García Negrón v. Tribunal Superior*, supra, pág. 733. En esas circunstancias hay un verdadero interés en mantener la confidencialidad de la comunicación,

"(5) El procedimiento es sobre una controversia en torno a la validez de un alegado testamento del paciente.

"(6) La controversia es entre partes que derivan sus derechos del paciente, ya sea por sucesión testada o intestada.

"(7) La comunicación es pertinente a una controversia basada en el incumplimiento de un deber que surge de la relación médico y paciente.

"(8) Se trata de una acción en que la condición del paciente constituye un elemento o factor de la reclamación o defensa del paciente, o de cualquier persona que reclama al amparo del derecho del paciente o a través de éste, o como beneficiario del paciente en virtud de un contrato en que el paciente es o fue parte.

"(9) El poseedor del privilegio hizo que el médico o un agente o empleado de éste declarar[a] en una acción respecto a cualquier materia que vino en conocimiento del médico, su agente o empleado por medio de la comunicación.

"(10) La comunicación es pertinente a una controversia relacionada con un examen médico ordenado por el tribunal a un paciente, sea el paciente parte o testigo en el pleito." 32 L.P.R.A. Ap. IV.

que supera el interés en ventilar hechos pertinentes al litigio. Íd.

En cuanto al testimonio del psicoterapeuta de un menor en casos de custodia, muchos juristas opinan que si bien puede tener gran valor en ciertos casos, este valor no supera el perjuicio causado al violentar la confidencialidad requerida por el tratamiento, mucho más cuando existe la posibilidad de contratar otros peritos para ilustrar al tribunal o para evaluar al menor para el propósito de determinar la custodia:

> Undoubtedly, a child's therapist could provide useful information to the court, but the utility of the information may be outweighed by the child's right to privacy. If a mature child consents to having the therapist testify or if the therapist feels strongly that he should provide information to the court, the testimony probably would be appropriate.
>
> If, however, the child and therapist believe that the privilege should be maintained (or if the child is too young to give meaningful consent and the therapist feels the privilege should be maintained), courts should respect the child's right to confidentiality. As with mental health issues concerning the parent, *if an evaluation of the child is needed, an evaluation could be done specifically for trial without disturbing the child's confidential relationship with the therapist.* (Énfasis suplido y escolio omitido.) 2 *Modern Child Custody Practice 2d* Sec. 12–38 (1998).

Una solución propuesta es la de distinguir entre el psicoterapeuta que examina al menor por orden del tribunal y el psicoterapeuta contratado privadamente para propósitos de tratamiento. Véase *Psychiatric and Psychological Evidence 2d* Sec. 13.04 (1995). En la primera situación no existe el privilegio, puesto que el propósito del examen es, precisamente, informar al tribunal, no brindar tratamiento ni establecer una relación de confidencialidad. Por el contrario, el privilegio se activa cuando el psicólogo o psiquiatra es contratado privadamente para brindar tratamiento.

## C. *Consideraciones éticas que rigen a los psicoterapeutas en Puerto Rico y Estados Unidos*

Al abordar el tema de la confidencialidad de la comunicación entre cliente y psicoterapeuta, el Código de Ética de la Asociación de Psicología de Puerto Rico establece, en su Principio 6, lo siguiente:

Principio 6: *Confidencialidad*

Salvaguardar la información que se ha obtenido sobre un individuo al llevar a cabo las tareas de enseñanza práctica profesional o investigación, es una de las obligaciones principales de un psicólogo. Dicha información no se le comunica a otros excepto en casos especiales y atendiendo a las siguientes guías:

a. Toda comunicación profesional es estrictamente confidencial.

b. El psicólogo que le pide a un individuo que revele información personal durante el transcurso de entrevistas, pruebas o evaluación, o que permite que tal información le sea comunicada, lo hace solamente después de asegurarse que la persona está completamente consciente de los propósitos de la entrevista, prueba o evaluación así como de la utilización que se le dará a dicha información. El psicólogo es responsable de informar al cliente aquellas situaciones generales en que no se compromete a mantener confidencialidad.

. . . . . . . .

d. La información obtenida a través de consultoría, psicoterapia, evaluación psicológica o psicométrica se discute solamente con propósitos profesionales y sólo con aquellas personas a quiénes realmente les concierne el caso previa autorización del cliente. Los informes escritos y orales deben incluir solamente datos relevantes a los propósitos de la evaluación.

. . . . . . . .

h. El psicólogo toma medidas para mantener la confidencialidad en la conservación y disposición final de los documentos confidenciales.

Según el inciso (b) de las Guías Profesionales para la Evaluación Psicológica, "[e]l evaluador debe tratar de evitar el desempeño simultáneo de roles que podrían resultar conflictivos". Asociación de Psicólogos de Puerto Rico, *Guías profesionales para la evaluación psicológica*, marzo

de 1991, pág. 3. De hecho, el que un psicoterapeuta tratante actúe simultáneamente como perito, como sugiere la peticionaria, puede ser antiético. V.J. Lladó, M.D. F.A.P.A., *Brújula para Salud Mental*, San Juan, Publicadora Nacional de Salud Mental, 2000, pág. 255. Según señala el doctor Lladó:

> Los issues [sic] más directamente relevantes para la corte no necesariamente son los issues [sic] más relevantes para tratamiento, y esos issues [sic] relevantes para la corte tienen que ser evaluados por el psiquiatra forense. Lladó, *op. cit.*, pág. 258.

En específico, este autor ha indicado que

> [u]na de las dificultades mayores que todavía persiste en el área de la ciencia de la conducta [con] relación a los tribunales tiene que ver con un viejo hábito de muchos abogados litigantes que tratan de utilizar al psiquiatra o psicólogo que está tratando al demandante como perito experto en corte. Desde 1986 est[a] práctic[a] se ha considerad[o] no deseabl[e] desde el punto vista ético por la Academia Americana de Psiquiatría y la Ley, la organización nacional más prestigiosa en el campo de la psiquiatría forense. Lladó, *op. cit.*, pág. 256.

La Asociación Americana de Psicología también ha cuestionado el rol dual terapista-evaluador, en unas guías interpretativas tituladas *Guidelines for Child Custody Evaluations in Divorce Proceedings*. En éstas se indica que un psicólogo debe evitar llevar a cabo evaluaciones de custodia en aquellos casos en los que haya desempeñado un rol terapéutico para el niño o su familia inmediata, o en los que su involucramiento pueda comprometer su objetividad. Advierten las guías, además, que el psicólogo debe ser conciente del impacto que testificar en esas circunstancias puede tener sobre la relación terapéutica.(4)

---

(4) "Psychologists generally avoid conducting a child custody evaluation in a case in which the psychologist served in a therapeutic role for the child or his or her immediate family or has had other involvement that may compromise the psychologist's objectivity." A renglón seguido, las guías indican lo siguiente: "A psychologist asked to testify regarding a therapy client who is involved in a child cus-

El Código de Ética de la Asociación Americana de Psicología trata también el tema de la confidencialidad de la información obtenida durante el tratamiento. En específico, dispone en su Sec. 4.01 que los psicólogos tienen la obligación primordial de proteger la información confidencial y tomar precauciones razonables hacia ese fin, dentro de lo establecido por la ley, las reglas institucionales o las relaciones profesionales y científicas.(5)

 El que un psicoterapeuta que brinda tratamiento privado a un menor se involucre en el proceso judicial también puede contaminar la relación terapéutica y socavar la relación de confianza que ésta requiere. Explica el doctor Lladó que "cuando el psicoterapeuta se adentra en el rol del perito ... tendrá ... que exponerse a revelar lo que ocurre durante las sesiones". Lladó, *op. cit.*, pág. 257. Por eso, la confidencialidad, que es "un ingrediente indispensable al desarrollo de la confianza", peligra una vez el psicoterapeuta "se adentra ya en el territorio más público de los tribunales". Íd. La probabilidad de violar la confidencialidad también puede resultar en la violación de un compromiso ético del psicoterapeuta con su paciente. M.G. Goldzband, *Custody Cases and Expert Witnesses: A Manual for Attorneys*, 2da ed., Nueva Jersey, Prentice Hall Law and Business, 1988, pág. 53. Ahora bien, a pesar de las normas éticas que le impiden al psicoterapeuta violar un acuerdo de confidencialidad, el privilegio de no revelar la información es del paciente y no del psicoterapeuta, a quien las reglas no reconocen ningún privilegio. Íd. Por lo

---

tody case is aware of the limitations and possible biases inherent in such a role and the possible impact on the ongoing therapeutic relationship." *Guidelines for Child Custody Evaluations in Divorce Proceedings*, 49 (Núm. 7) American Psychologist 677–680 (1994).

(5) "Psychologists have a primary obligation and take reasonable precautions to protect confidential information obtained through or stored in any medium, recognizing that the extent and limits of confidentiality may be regulated by law or established by institutional rules or professional or scientific relationship." American Psychological Association, *Ethical Principles of Psychologists and Code of Conduct*, Sec. 4.01 (2002).

tanto, si el menor renuncia válidamente al privilegio, el psicoterapeuta está obligado a testificar en el juicio.([6])

### III

Decidir lo que responde al mejor bienestar del menor entraña una gran responsabilidad.([7]) Tomando en consideración los hechos del presente caso, pasamos a resolver a la luz de nuestro derecho probatorio y nuestra política pública a favor de los mejores intereses y el bienestar del menor.

La peticionaria alega que el recurrido no ha cuestionado "la importancia y relevancia del testimonio de la doctora Delgado". Ello, sin embargo, no es necesario, pues las Reglas de Evidencia, sobre privilegios, presuponen la pertinencia del testimonio cuestionado. Se trata, precisamente, de normas para excluir prueba no obstante su pertinencia, exclusión que obedece a razones extrínsecas que tienen que ver con la política pública. Por lo tanto, no es necesario que el recurrido cuestione la pertinencia del testimonio de la doctora Delgado. La peticionaria también alega que la doctora Delgado es una perito de ocurrencia, ya que ha adquirido conocimientos sobre asuntos esenciales de la controversia; aduce también que la información que ella posee es irremplazable.([8]) No nos convencen estos

---

([6]) El beneficiado por un privilegio puede, desde luego, renunciarlo. Cuando se trata de un menor, algunas jurisdicciones permiten al padre o a la madre renunciar al privilegio en beneficio del menor, particularmente cuando se alega que el otro padre ha maltratado al niño. 4 *Child Custody and Visitation Law and Practice* Sec. 20.06[6] (2004). Esto, sin embargo, puede traer conflictos en cuanto a cuál de los padres puede renunciar al privilegio. Por esa razón, algunos tribunales designan un defensor judicial para tomar la decisión en interés del menor. Íd.

([7]) Para una discusión a fondo de la responsabilidad de los tribunales cuando se enfrentan al criterio del "mejor bienestar del menor", véase R.H. Mnookin, *In the Interest of Children: Advocacy, Law Reform, and Public Policy*, Nueva York, W.H. Freeman and Company, 1985, págs. 16–18.

([8]) A estos fines, cita nuestra opinión en *San Lorenzo Trad., Inc. v. Hernández*, 114 D.P.R. 704, 718 (1983), donde expusimos que los peritos de ocurrencia son "aquellos que de antemano han obtenido conocimiento extrajudicial de los hechos a través

argumentos, pues lo que nos compete decidir en este caso no es si el testimonio de la doctora Delgado es pertinente o valioso, sino si está sujeto a exclusión bajo el privilegio médico-paciente y el principio del mejor bienestar del menor. Coincidimos con el recurrido en cuanto alega que permitir testificar a la doctora Delgado iría en contra del bienestar del menor, ya que "el menor ha logrado comunicación efectiva y positiva con su terapista, la cual se perdería en la medida en que uno de los padres o ambos le retiren su confianza". Oposición a *certiorari*, pág. 16. Argumenta también el recurrido que solicitar a la psicoterapeuta que testifique la coloca en un "grave conflicto ético". Sin embargo, esto, aunque fuera cierto, no nos obliga, ya que debemos evaluar la controversia desde la perspectiva del menor, quien es el paciente y poseedor del privilegio.

En la carta que sometió al foro de instancia para cumplir con el dictamen del Tribunal de Apelaciones, la doctora Delgado expone varios argumentos pertinentes a la solución final de la presente controversia. En primer lugar, indica que informó a la peticionaria, desde un principio, que "no aceptaba casos que tuvieran procesos en los tribunales" y que ésta le aseguró que la solicitud era "exclusivamente para servicios terapéuticos y que cada una de las partes tenía peritos en psicología contratados para los procesos en el Tribunal, por lo que [ella] no tendría que involucrar[s]e en el proceso legal".(⁹) Apéndice de la Petición de *certiorari*,

---

de observaciones directas o por participación en eventos subsiguientemente pertinentes a la litigación. Pueden haber sido remunerados o no en aquel momento. Son personas que han tenido percepción inmediata de los hechos y, como tales, poseen información irreemplazable".

(⁹) En el presente caso no hay una escasez de testimonio pericial, sino todo lo contrario, pues otros siete peritos han evaluado a las partes y al menor, y han rendido sendos informes. No tienen ningún impedimento para testificar. Específicamente, el recurrido anunció a la Dra. Carol Romey, la Dra. Lucca Irizarry y la trabajadora social Sra. Sylvia Burgos. La peticionaria anunció al Dr. José H. Rodríguez y a la trabajadora social Estela Rivas Nina. Además, el Tribunal de Primera Instancia nombró dos peritos: la trabajadora social Wanda Bravo y la psicóloga, doctora Hamilton.

pág. 382. También explica la doctora Delgado en su carta que ambos padres han estado involucrados en el proceso terapéutico del menor. Añade: "Debido a los acuerdos terapéuticos que se hicieron con ambos padres del niño, me veo imposibilitada de asistir al Tribunal o de rendir un informe si uno de los padres se opone." Íd.

Según la doctora Delgado, su posición de negarse a asistir a los procesos judiciales se fundamenta en que "el ambiente hostil que en [é]stos permea es contrario al quehacer terapéutico" y en que su comparecencia al tribunal le imposibilitaría "poder continuar con la relación terapéutica, ya que existe la probabilidad de que alguno de los padres pueda sentirse incómodo con la información vertida y decida retirarse del proceso terapéutico, lo que sería perjudicial para el menor". Apéndice de la Petición de *certiorari*, pág. 383. Por último, admite que posee "información sobre este caso que podría ser de interés al Tribunal", pero entiende "que esta información no es indispensable" para que el tribunal pueda tomar una decisión en beneficio del menor, más aún cuando hay otros profesionales en el área de la conducta humana que pueden brindar información relevante. Íd. Además, señala que el menor ha logrado una mejoría debido a su tratamiento.

La peticionaria plantea que el Tribunal de Apelaciones erró porque delegó en la doctora Delgado determinar si testificaba en el proceso. Expone la peticionara que la doctora Delgado era una "testigo en el caso", lo cual es patentemente erróneo, puesto que su relación con las partes siempre ha sido la de psicoterapeuta del menor. Sin embargo, el foro apelativo erró, pues la decisión de si habría de testificar no le correspondía a la doctora Delgado, no obstante la utilidad de su explicación sobre los conflictos inherentes a su testimonio. Se trataba de una decisión claramente judicial y el foro apelativo erró al delegarla. Además, el testimonio impugnado está protegido por un privi-

legio médico-paciente que ha sido reclamado a nombre del menor D.A., y son los tribunales los llamados a resolver las controversias relacionadas a comunicaciones privilegiadas.

■ Resolvemos que cuando se llama al psicoterapeuta del menor a testificar en el pleito sobre su custodia, el tribunal debe determinar, en primer lugar, si a ese profesional lo nombró el tribunal o lo contrataron las partes para evaluar al menor *con el fin de testificar en el juicio*, o si fue contratado privadamente *para ofrecer tratamiento al menor.* En el primer caso, no existe la expectativa de confidencialidad, puesto que la evaluación se hace con el propósito de que el perito emita una opinión ante el foro sentenciador. Esa comunicación no es privilegiada, y en esas condiciones el testimonio del psicoterapeuta no resulta en detrimento de los mejores intereses del menor. Además, si al perito lo designa el tribunal, su testimonio no es privilegiado de acuerdo con la décima excepción establecida en la Regla 26(C)(10) de Evidencia, *supra.*

■ Ahora bien, si al perito lo contratan privadamente con el fin de brindar tratamiento al menor, se establece una relación protegida estatutariamente por la Regla 26 de Evidencia, *supra*, y surge el privilegio médico-paciente en su vertiente psicoterapeuta-paciente. Este privilegio es exclusivo del menor que recibe el tratamiento y no del psicoterapeuta que lo atiende ni de sus padres.[10]

■ Nuestra política pública, que ampara a los menores y persigue que las decisiones judiciales aseguren su bienestar, nos exige vindicar este interés superior y determinar que el bienestar de los menores nos requiere prote-

---

[10] Es usual que las partes contraten peritos para que ofrezcan su opinión cuando se litiga en torno a la custodia de un menor. Ello, claro está, con el propósito de lograr que el tribunal favorezca sus respectivas posiciones. Sin embargo, para aplicar el principio o criterio de los mejores intereses del menor, no se requiere un testimonio pericial, contrario a cuando se alega incapacidad mental o locura. *Psychiatric and Psychological Evidence 2d* Sec. 13.04 (1995).

ger la confidencialidad de su tratamiento psicológico privado. Con ello, promovemos que los padres que entiendan que sus hijos necesitan ayuda psicoterapéutica la soliciten, para que los menores puedan afrontar exitosamente la separación de sus padres y el cambio que esto representa en sus vidas.

 El privilegio médico-paciente, según la Regla 26(B) de Evidencia,

> ... puede ser invocado no sólo por su poseedor, *el paciente*, sino también por *una persona autorizada* para invocarlo en beneficio del paciente, o por *el médico* a quien se hizo la comunicación confidencial, si éste lo invoca a nombre de y para beneficio del paciente. (Énfasis suplido.)

Por lo tanto, en el caso que nos ocupa, tratándose de un menor, pueden invocar el privilegio el psicoterapeuta y los padres con custodia del menor, por ser "personas autorizadas" para invocar el privilegio en su nombre.

 Recordemos, no obstante, que si bien el psicoterapeuta puede invocar el privilegio a nombre de su paciente, no tiene el poder de decidir si testifica o no. Debemos tener presente también que aunque la intervención de peritos puede arrojar luz sobre asuntos medulares en los pleitos de custodia, su testimonio no es el factor determinante. Los pleitos de custodia no se deben convertir en una batalla entre los peritos de ambas partes, con la consecuencia de someter al menor a numerosas intervenciones.[11] Por el contrario, la responsabilidad y la capacidad para adjudicar un pleito de custodia descansa, no en los peritos, sino en los tribunales.

---

[11] Señalamos, sin embargo, que cuando se alegue que el menor ha estado expuesto a abuso sexual o maltrato psicológico o físico, pueden existir otras consideraciones que los tribunales deben evaluar para salvaguardar el bienestar del menor.

# IV

En apoyo a nuestra política pública de protección a los mejores intereses del menor, se debe reconocer que el privilegio médico-paciente impide el testimonio de la doctora Delgado en este caso. No están presentes en esta controversia ninguna de las excepciones establecidas en la Regla 26(C) de Evidencia, *supra*, y el privilegio lo han invocado el padre del menor y su psicoterapeuta. Al oponerse a que se violente la confidencialidad de la relación de su hijo con la psicoterapeuta, lo que ha hecho el recurrido, señor Meléndez Lugo, es reclamar este privilegio a nombre de su hijo. De igual forma, en su carta la doctora Delgado también reclama la confidencialidad del tratamiento en beneficio de su paciente. Por lo tanto, amparados en nuestro poder de *parens patriae*, determinamos que en este caso se ha invocado correctamente el privilegio médico-paciente en su vertiente de psicoterapeuta-cliente. Concluimos, además, que el mejor interés del menor radica en prohibir el testimonio de la doctora Delgado. No podemos permitir que el avance emocional logrado por el menor gracias a la terapia de la doctora Delgado se vea empañado por una solicitud inmeritoria para que ésta asuma el rol de perito de ocurrencia.([12])

La decisión que hoy tomamos no es a favor ni en contra de ninguna de las partes, como tampoco de la psicoterapeuta del menor, sino en beneficio de éste, que desde los

---

([12]) No estamos ajenos a que los abogados pueden interesar el testimonio del psicoterapeuta que trata al menor por razones económicas. V.J. Lladó, M.D. F.A.P.A., *Brújula para Salud Mental*, San Juan, Publicadora Nacional de Salud Mental, 2000, págs. 258–259. De esta forma, el psicoterapeuta se convertiría en un perito de ocurrencia, y éstos, como regla general, no reciben compensación por su testimonio en corte, sino que se consideran testigos ordinarios para todos los efectos. *San Lorenzo Trad., Inc. v. Hernández*, 114 D.P.R. 704, 718 (1983). Esta realidad podría influir igualmente en la posición de los psicoterapeutas que se niegan a testificar en estas circunstancias. Con nuestra decisión evitamos que la práctica de contratar privadamente a un psicoterapeuta para brindar tratamiento al menor, para luego llamarlo a testificar como perito de ocurrencia, se convierta en un patrón. Véase Lladó, *op. cit.*, págs. 385–386.

tres años está en el centro de una contienda emocional y judicial. Ese es nuestro único norte y debe serlo también de las partes.

Por todo lo antes expuesto, *expedimos el auto para revocar la sentencia enmendada emitida por el foro apelativo intermedio y confirmamos la decisión del foro de instancia, a los fines de excluir el testimonio de la doctora Delgado, psicoterapeuta del menor.*

*Se dictará sentencia de conformidad.*