ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| CYNTHIA A. MATOSANTOS LEWIS<br><br>Recurrida<br><br>V.<br><br>FEDERICO A. CARDONA FIRPI<br><br>Peticionario | TA2025CE00797 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm.: BY2020RF01826<br><br>Sobre: Divorcio-Ruptura Irreparable |

Panel integrado por su presidente, el Juez Rodríguez Casillas, la Jueza Mateu Meléndez y el Juez Marrero Guerrero.

Marrero Guerrero, Juez Ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 30 de enero de 2026.

Comparece el Sr. Federico A. Cardona Firpi (señor Cardona Firpi o peticionario) y nos solicita que revisemos una *Resolución y Orden* emitida y notificada el 11 de septiembre de 2025 por el Tribunal de Primera Instancia, Sala Superior de Bayamón (TPI).[1] Mediante referido dictamen, el TPI dispuso una serie de asuntos, entre ellos determinó que se mantuviera al menor S.A.C.M. en el equipo de baloncesto en la liga BUCAPLAA y ordenó que se coordinara su participación en actividades relacionadas.

Con el beneficio de la Transcripción de la Prueba Oral (TPO) nos encontramos en posición de resolver.[2] Por los fundamentos que expondremos a continuación, denegamos la expedición del auto de *certiorari.*

---

[1] Entrada Núm. 930 del caso BY2020RF01826 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).

[2] Apuntalamos que, el 11 de diciembre de 2025, emitimos una *Resolución* concediéndole a la parte recurrida hasta el 17 de diciembre de 2025, para expresarse en cuanto si estipulaba la TPO que obraba en la Entrada Núm. 953 del expediente del caso en el TPI. Transcurrido el término sin presentar su posición y habiendo hecho referencia a la misma en su alegato, juzgamos que consintió implícitamente a su contenido.

**I.**

El caso ante nuestra consideración tiene su origen en el 27 de noviembre de 2020, cuando la Sra. Cynthia Matosantos Lewis (señora Matosantos Lewis o recurrida) instó una *Demanda* sobre divorcio por ruptura irreparable en contra del señor Cardona Firpi.[3] En la misma, alegó que contrajo nupcias con el peticionario el 14 de mayo de 2016 y que como producto de dicho matrimonio procrearon al menor S.A.C.M. No obstante, sostuvo que existían diferencias irreconciliables que imposibilitaban la convivencia matrimonial por lo que solicitó la disolución de su vínculo matrimonial. A su vez, peticionó la custodia y patria potestad monoparental, además de una pensión alimentaria para el menor.

En respuesta, el 14 de diciembre de 2020, el señor Cardona Firpi presentó su *Contestación a Demanda de Divorcio por Ruptura Irreparable; Solicitud de Vista Urgente sobre Relaciones Filiales al amparo de la Ley 223-2011; Vista ante la Examinadora de Pensiones y Medidas Protectoras*.[4] Allí, coincidió con la recurrida en cuanto a que el matrimonio estaba irremediablemente roto y que no existía posibilidad reconciliación.

Por otra parte, peticionó la custodia compartida provisional del menor hasta la vista. Señaló que, la señora Matosantos Lewis ha impedido que el peticionario se relacionara con su hijo y que esto fue por recomendación expresa de la representación legal de la recurrida. Conforme a ello, solicitó una vista urgente para establecer la relacionas filiales.

Así las cosas, el 26 de enero de 2021, el TPI emitió una *Sentencia Final*.[5] Mediante aludido dictamen, decretó roto y disuelto el vínculo matrimonial. De igual forma, declaró que la patria

---

[3] *Íd.*, Entrada Núm. 1 en SUMAC TPI.
[4] *Íd.*, Entrada Núm. 17 en SUMAC TPI.
[5] *Íd.*, Entrada Núm. 86 en SUMAC TPI. Notificada el 27 de enero de 2021.

potestad del menor sería compartida y que la custodia la ejercería la recurrida provisionalmente. Además, dictó que se continuaría el plan establecido en la vista del 17 de diciembre de 2020, respecto a las relaciones paternofiliales provisionales.

Luego de varios trámites innecesarios pormenorizar, el 11 de junio de 2025, se celebró una vista donde el foro primario ordenó a la trabajadora social, la Lcda. Jensy Juan Zacarias (licenciada Zacarias), presentar un informe social y señaló vista para discutir el mismo para el 6 de agosto de 2025.[6]

Conforme a lo ordenado, el 14 de julio de 2025, la licenciada Zacarias presentó su *Informe Social Forense sobre ampliación de Relaciones Filiales y Ubicación Escolar.*[7]

Tras celebrada la vista para la discusión del informe social y las recomendaciones del mismo,[8] el 7 de agosto de 2025, el TPI emitió y notificó una *Resolución y Orden.*[9] Mediante esta, estableció las relaciones paternofiliales provisionales, así como la ubicación escolar del menor, entre otros asuntos. Además, ordenó a la Dra. María del Mar Torres Suria (doctora Torres Suria) emitir sus recomendaciones en cuanto a la ampliación de las relaciones paternofiliales.

A tales efectos, el 28 de agosto de 2025, la doctora Torres Suria presento un *Informe de Progreso* e hizo sus respectivas recomendaciones.[10]

Así pues, el 8 de septiembre de 2025, se llevó a cabo la vista sobre discusión del informe de progreso. A continuación, se sintetiza el testimonio vertido:

---

[6] *Íd.*, Entrada Núm. 886 en SUMAC TPI.
[7] *Íd.*, Entrada Núm. 898 en SUMAC TPI.
[8] *Íd.*, Entrada Núm. 926 en SUMAC TPI.
[9] *Íd.*, Entrada Núm. 906 en SUMAC TPI.
[10] *Íd.*, Entrada Núm. 922 en SUMAC TPI.

La doctora Torres Suria declaró que, el menor ha estado bajo su tratamiento por más de tres años.[11] Atestó que el joven tenía un conflicto de lealtades entre sus padres ya que no le quería fallar a ninguno de los dos.[12] A su vez, relató que el menor estaba consciente de los procesos judiciales a tal punto que se veía alteradas ciertas actividades de su diario vivir.[13] No obstante, testificó que el hijo tenía apego con ambos padres y disfrutaba cuando estaba en su respectivos ambientes.[14] Así, recomendó que, respecto a las relaciones filiales, que si el menor se adaptaba bien, añadirle hasta martes al padre en semanas alternas.[15]

Sobre la liga de baloncesto, declaró que se debería dejar al menor donde estaba, pero que se limitara a dos prácticas semanales y los fines de semana que participara en *Little Lads*.[16] Relató que, el hijo estaba muy a gusto con la liga y que quería jugar pero que no quería causar conflicto.[17] Dicho esto, sostuvo que no se podía realizar tanto cambio a la vez para así mantener al menor lo más estable posible.[18] Por otra parte, afirmó que dado el disturbio emocional que ha estado presentando el hijo, más la deficiencia de sus procesos de atención, recomendaría que sea medicado por un profesional de la salud.[19]

Acontecida la vista, el 11 de septiembre de 2025, el foro primario emitió y notificó una *Resolución y Orden*.[20] Allí, contando con el insumo del conocimiento pericial de la doctora Torres Suria, sus recomendaciones y luego de aquilatar las contenciones de las partes, dispuso lo siguiente:

> 1. Se mantiene la ampliación del plan de relaciones paternofiliales en semanas alternas, de jueves a lunes, con

---

[11] TPO de la vista del 8 de septiembre de 2025, pág. 11, líneas 1-3.
[12] *Íd.*, líneas 6-10.
[13] *Íd.*, líneas 11-22.
[14] *Íd.*, pág. 12, líneas 13-15.
[15] *Íd.*, líneas 19-25; pág. 13, líneas 1-5; líneas 18-21.
[16] *Íd.*, pág. 16, líneas 8-17.
[17] *Íd.*, pág. 18, líneas 1-12.
[18] *Íd.*, líneas 14-25; pág. 19, líneas 1-7.
[19] *Íd.*, pág. 23, líneas 8-21.
[20] Ver nota al calce Núm. 1.

recogido y entrega en la escuela. Este plan de relaciones paternofiliales se mantendrá inalterado por el término de tres meses.

2. Se ordena a la Dra. Torres Suria que, para el mes de noviembre de 2025, coordine con la psicóloga escolar la entrega de los inventarios escolares. Ello, para auscultar el estado emocional y aprovechamiento académico del menor SCM. Si este demuestra adaptación al plan de relaciones paternofiliales establecido, se evaluará la ampliación de las relaciones paternofiliales a semanas alternas de jueves a martes, con entrega y recogido en la escuela.

3. Se ordena mantener al menor SCM en el equipo de baloncesto en la liga BUCAPLAA, donde el menor ha manifestado sentirse totalmente a gusto.

4. Es obligación de las partes respetar el tiempo que el menor SCM dedica a jugar baloncesto.

5. Se ordena a las partes coordinar la participación del menor SCM en dos prácticas a la semana. Las partes deberán coordinar incluso una práctica adicional si el menor SCM fuera citado a un Fogueo, o le fuera requerido por la liga BUCAPLAA.

6. Compete exclusivamente al dirigente del equipo determinar, según las habilidades deportivas demostradas, la ubicación o categoría en que jugará el menor SCM.

7. Se ordena a las partes, en el término de 5 días, anunciar el neuropsicólogo(a) y psiquiatra pediátrico seleccionado. Se apercibe a las partes que no se descarta la posibilidad de medicación de ser recomendada como lo fuera por la neuróloga pediátrica.

8. La Dra. María del Mar Torres Suria continuará siendo la psicóloga del menor SCM.

9. Se sostiene, en todos sus extremos, la Resolución dictada el 7 de agosto de 2025, por lo que se ordena a las partes el fiel cumplimiento de esta.

Insatisfecho, el 26 de septiembre de 2025, el señor Cardona Firpi presentó una *Moción de Reconsideración.*[21] En síntesis, alegó que las órdenes dictadas en la Resolución lo privaron y despojaron de sus derechos de patria potestad sobre su hijo. A su vez, sostuvo que fue privado de declarar ante el tribunal lo cual infringió en su debido proceso de ley.

Por su parte, el 14 de octubre de 2025, la señora Matosantos Lewis presentó su *Oposición a "Moción de Reconsideración".*[22] Esbozó que, el Estado tenía un deber de intervenir y determinar en

---

[21] *Íd.*, Entrada Núm. 936 en SUMAC TPI.
[22] *Íd.*, Entrada Núm. 943 en SUMAC TPI.

beneficio de los mejores intereses del menor cuando los padres con patria potestad no podían ponerse de acuerdo, como ocurrió en el presente caso. Respecto a la alegación de que se le privó al peticionario testificar, indicó que la vista era un asunto de peritaje y este último no era perito. No obstante, señaló que las partes tuvieron la oportunidad de contrainterrogar a la doctora Torres Suria.

Examinado los escritos, el 22 de octubre de 2025, el TPI emitió y notificó una *Resolución Interlocutoria* donde declaró Sin Lugar la reconsideración presentada.[23]

Aun inconforme, el señor Cardona Firpi acudió ante nos mediante el recurso de epígrafe y le imputó al foro primario la comisión de los siguientes errores:

> **PRIMER ERROR: ERRÓ Y ABUSÓ DE SU DISCRECIÓN EL TPI Y ACTUÓ EN CONTRA DEL MEJOR INTERÉS DEL MENOR CUANDO NO CONCEDIÓ EL VALOR PROBATORIO ADECUADO A LOS PERITOS DESIGNADOS Y SUS RECOMENDACIONES, IMPONIENDO DE FORMA ABSOLUTA LA PARTICIPACIÓN DEL MENOR EN EL BALONCESTO, SIN CONSIDERAR LA CARGA EXCESIVA QUE MANTIENE ENTRE HORARIO ESCOLAR, TUTORIAS Y DIFERENTES MODALIDADES DE TERAPIAS.**
>
> **SEGUNDO ERROR: ERRÓ Y ABUSÓ DE SU DISCRECIÓN EL TPI AL DISPONER DE UNA MANERA ABSOLUTA Y SIN CONSIDERAR FACTORES EXTERNOS QUE LAS PARTES DEBEN RESPETAR EL TIEMPO QUE EL MENOR DEDICA A JUGAR BALONCESTO, LIMITANDO IRRAZONABLEMENTE EL PODER DECISIONAL DEL PROGENITOR CON PATRIA POTESTAD Y EL TIEMPO DE LAS RELACIONES FILIALES CON EL MENOR.**
>
> **TERCER ERROR: ERRÓ Y ABUSÓ DE SU DISCRECIÓN EL TPI CUANDO DISPUSO QUE LE ORDENA A LOS PROGENITORES QUE COORDINEN LA PARTICIPACION DEL MENOR EN SOLO DOS PRÁCTICAS A LA SEMANA, PERO A SU VEZ LE CONCEDE LA FACULTAD A LA LIGA DE BUCAPLAA DE REQUERIR UNA TERCERA PRÁCTICA; ADEMÁS DE CONFERIRLE AL DIRIGENTE LA FACULTAD EXCLUSIVA DE DETERMINAR CIERTOS ASPECTOS SOBRE EL MENOR, ELLO, EN TOTAL MENOSPRECIO DEL EJERCICIO DE LA PATRIA POTESTAD DEL PETICIONARIO.**
>
> **CUARTO ERROR: ERRÓ Y ABUSÓ DE SU DISCRECIÓN EL TPI AL PRIVAR AL PETICIONARIO DEL DEBIDO PROCESO DE LEY Y SU DERECHO DE SER OÍDO EN LA VISTA CELEBRADA EL 8 DE SEPTIEMBRE DE 2025,**

---

[23] *Íd.*, Entrada Núm. 944 en SUMAC TPI.

**LIMITANDO ASÍ EL EJERCICIO DE LA PATRIA POTESTAD.**

En esencia, el peticionario arguyó que el TPI incidió al imponer de forma absoluta la participación del menor en el baloncesto a pesar de las recomendaciones periciales. Sostuvo que, el menor tenía rezago académico por lo que recibía tutorías de lunes a jueves, sin contar con las terapias ordenadas por el tribunal. A tales efectos, puntualizó que ante la carga académica y terapéutica que el menor poseía se debería considerar una liga de menos intensidad.

De igual forma, manifestó que el dictamen impugnado afectaba el derecho constitucional del peticionario a escoger libremente y sin restricciones las actividades extracurriculares que realizaría con su hijo. A esto, añadió que imponer de manera absoluta las obligaciones deportivas del menor conllevaba una limitación irrazonable de las relaciones filiales del señor Cardona Firpi y era una violación a su derecho constitucional de tomar decisiones en la vida de su hijo.

A su vez, esbozó que era de conocimiento general el problema que confrontaban los clubes deportivos con la sobrecarga que les imponen a los atletas, al igual, de la exigencias y conductas que exhibían los dirigentes, que no necesariamente correspondían a los valores y la disciplina que los progenitores desearían inculcar a sus hijos. Por lo que, razonó que la decisión respecto la participación de los hijos menores en el deporte siempre tenía que permanecer en manos de los progenitores.

Por último, arguyó que se le violentó su derecho al debido proceso de ley toda vez que no tuvo una oportunidad de ser oído. Indicó que, durante la vista solicitó poder expresarse ante el tribunal, sin embargo, que no se le permitió ya que el peticionario ni la recurrida eran peritos en la conducta, además, de que estos

tuvieron amplia oportunidad para contrainterrogar el testimonio vertido por la doctora Torres Suria.

Por su parte, la señora Matosantos Lewis arguyó que los errores señalados no fueron cometidos. Sostuvo que, ante la falta de capacidad de los padres para llegar a un acuerdo, el TPI tenía un deber de intervenir y determinar en conformidad con el mejor bienestar del menor tal como ocurrió en el presente caso. Dicho esto, esbozó que a pesar de que el menor padece de Déficit de Atención e Hiperactividad, el baloncesto y el Club donde practica son de las pocas cosas que le brindan estabilidad a éste. Además, señaló que del informe de la doctora Torres Suria surgía de que el mayor problema del menor eran los conflictos entre las partes.

Por otro lado, esgrimió que el TPI no tomó una determinación irrazonable ni a ciega, sino que acudió a los profesionales que atendían al menor, en este caso, la doctora Torres Suria, para que se expresara en cuanto el deporte y el Club del menor, entre otras cosas. Así, indicó que las determinaciones del foro *a quo* no despojaban a los progenitores de su patria potestad, en cambio, regulaba la coordinación de actividades del menor, en específico, su participación en el deporte.

Finalmente, adujo que en la vista donde alegadamente se le privó al peticionar testificar era de peritaje y este último no era un perito. No obstante, señaló que las partes tuvieron la oportunidad de contrainterrogar al perito. Además, puntualizó que se han celebrado innumerables vistas y varios referidos a la Unidad Social, por tanto, las partes si han tenido la oportunidad de exponer sus posiciones.

## II.

### A. *Certiorari*

El *certiorari* es un vehículo procesal extraordinario que permite que un tribunal de mayor jerarquía revise decisiones de un foro

inferior. *Rivera et al., v. Arcos Dorados et al.,* 212 DPR 194, 207 (2023); *McNeill Healthcare LLC v. Municipio De Las Piedras*, 206 DPR 391, 404 (2021); *Medina Nazario v. McNeill Healthcare LLC*, 194 DPR 723, 728 (2016); *IG Builders et al. v. BBVAPR*, 185 DPR 307, 337-338 (2012). La expedición del auto es discrecional, por tratarse ordinariamente de asuntos interlocutorios. *Íd.*

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, limita taxativamente las instancias en que procede expedir el auto de *certiorari* en asuntos interlocutorios civiles. *McNeill Healthcare LLC v. Municipio De Las Piedras, supra*; *Scotiabank de Puerto Rico v. ZAF Corporation, et als.*, 202 DPR 478 (2019). Así, solo procede revisar resoluciones u órdenes bajo las Reglas 56 y 57 de Procedimiento Civil, *supra*, o la denegación de mociones dispositivas. Como excepción, se pueden revisar asuntos sobre la admisibilidad de testigos de hechos o peritos esenciales, privilegios evidenciarios, rebeldía, relaciones de familia, interés público u otra situación en la que esperar a la apelación constituiría un fracaso irremediable de la justicia. *Íd.*

Si el asunto interlocutorio no se encuentra dentro de estas instancias, el Tribunal carece de autoridad para intervenir. Su propósito es evitar la dilación que implicaría la revisión inmediata de controversias que pueden atenderse en un recurso de apelación. *Scotiabank de Puerto Rico v. ZAF Corporation, et als., supra*, pág. 486.

Por otro lado, la Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 141, 216 DPR __ (2025), R. 40, establece los criterios que orientan el ejercicio de nuestra facultad discrecional para atender una petición de *certiorari*. A saber, este Tribunal debe evaluar:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y

manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Cuando se deniega la expedición del auto de *certiorari*, no es necesario exponer las razones de dicha determinación. *IG Builders et al. v. BBVAPR, supra,* pág. 336. En tal caso, esta Tribunal no asume jurisdicción sobre el asunto ni lo resuelve en sus méritos. *McNeill Healthcare LLC v. Municipio De Las Piedras, supra,* pág. 405.

**B. Bienestar del Menor**

Nuestro Tribunal Supremo ha establecido que los casos relacionados al derecho de familia están investidos del más alto interés público y tienen carácter *sui géneris. Figueroa v. Del Rosario,* 147 DPR 121, 128 (1998). Los tribunales, en su poder de *parens patrie,* deben solventar los pleitos sobre patria potestad y custodia tras un análisis objetivo, sereno y cuidadoso de todas las circunstancias, con el único y principal objetivo de velar por el interés óptimo del menor de edad. *Ortiz v. Meléndez,* 164 DPR 16, 26-27 (2005); *Santana Medrano v. Acevedo Osorio,* 116 DPR 298, 301 (1985). En esa dirección, un tribunal puede ordenar la comparecencia de todas aquellas personas cuya participación resulte útil para dilucidar el curso de acción que mejor proteja el bienestar del menor. *Muñoz Sánchez v. Báez de Jesús,* 195 DPR 645 (2016). Asimismo, el foro se encuentra facultado para ordenar investigaciones de índole social que estime pertinentes. *Íd.*

Por otra parte, el Artículo 589 del Código Civil de 2020, 31 LPRA sec. 7241, dispone que la patria potestad es el conjunto de

deberes y derechos que corresponden a los progenitores sobre la persona y los bienes de los hijos, desde que estos nacen hasta que alcanzan la mayoría de edad u obtienen su emancipación. Adicionalmente, en virtud de la patria potestad, los progenitores tienen respecto a sus hijos las siguientes obligaciones:

> (a) velar por él y tenerlo en su compañía;
>
> (b) alimentarlo y proveerle lo necesario para su desarrollo y formación integral;
>
> (c) inculcarle valores y buenos hábitos de convivencia y el respeto a sí mismo y hacia los demás;
>
> (d) corregirlo y disciplinarlo según su edad y madurez intelectual y emocional y castigarlo moderadamente o de una manera razonable; y
>
> (e) representarlo en el ejercicio de las acciones que puedan redundar en su provecho y en aquellas en las que comparece como demandado. Art. 590 del Código Civil de 2020, 31 LPRA sec. 7242.

## III.

En el presente caso, el señor Cardona Firpi arguyó que el TPI incidió al imponer de forma absoluta la participación del menor en baloncesto a pesar de las recomendaciones periciales y sin tomar en consideración la carga excesiva que el menor poseía. Así, sostuvo que el dictamen impugnado limitaba irrazonablemente el poder decisional del progenitor con patria potestad y sus relaciones filiales. De igual forma, manifestó que se le privó su debido proceso de ley toda vez que no se le permitió ser escuchado en la vista celebrada el 8 de septiembre de 2025.

Tras un análisis sosegado de la totalidad del expediente ante nos, a tenor con los criterios dispuestos en la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, R. 40 y la Regla 52.1 de Procedimiento Civil, *supra*, R. 52.1, determinamos abstenernos de ejercer nuestra función revisora sobre los asuntos señalados por la parte peticionaria.

No encontramos que la determinación recurrida sea irrazonable, contraria a derecho o que constituya un fracaso a la justicia. El TPI contando con el insumo del conocimiento pericial de

la doctora Torres Suria y ante la inhabilidad de las partes de llegar a un acuerdo, emitió un dictamen tomando en consideración el mejor bienestar del menor y dispuso una serie de órdenes que a su juicio mejor cumplía dicho propósito. Así, no percibimos que el foro *a quo* haya realizado una intromisión indebida de las facultades de la patria potestad, ni de las relaciones paternofiliales de los progenitores. Por último, no consideramos que al peticionario se le haya privado su derecho a ser oído. El propósito de la vista celebrada el 8 de septiembre de 2025, era para discutir el informe presentado por la doctora Torres Suria y las partes tuvieron la oportunidad de contrainterrogar el testimonio vertido por la perito.

En atención a lo anterior, declinamos la invitación de la parte peticionaria en intervenir con la determinación del TPI.

**IV.**

Por los fundamentos que anteceden, se deniega la expedición del auto de *certiorari*.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones