Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VI

| GABRIELA BORTOLAMEDI GARCÍA<br><br>Apelante<br><br>v.<br><br>MAURICIO FLORES PEÑA<br><br>Apelado | KLAN202401015 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso número: SJ2024RF00863<br><br>Sobre: Custodia y privación de patria potestad |
|---|---|---|

Panel integrado por su presidenta, la jueza Ortiz Flores, la juez Aldebol Mora y la jueza Boria Vizcarrondo.

Aldebol Mora, Juez Ponente

# SENTENCIA

En San Juan, Puerto Rico, a 17 de junio de 2025.

Comparece la parte apelante, Gabriela Bortolamedi García, y nos solicita que revoquemos la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan, el 17 de septiembre de 2024, notificada el 19 del mismo mes y año. Mediante dicho dictamen, el foro primario desestimó la acción instada por la parte apelante por falta de jurisdicción.

Por los fundamentos que exponemos a continuación, se revoca el dictamen apelado. Veamos.

## I

El 3 de julio de 2024, Gabriela Bortolamedi García (Bortolamedi García o apelante) incoó una *Demanda* sobre custodia y privación de patria potestad en contra de Mauricio Flores Peña (Flores Peña o apelado).[1] Indicó que las partes tuvieron una relación consensual durante cinco (5) años y procrearon a la menor U.I.B.F. Señaló que las partes se separaron en el año 2022 y la custodia de

---

[1] Apéndice I del recurso, págs. 1-4.

Número Identificador

SEN2025 _____

la menor era compartida. Alegó que vivió con Flores Peña en México durante siete (7) años, pero que vivía con la menor en Puerto Rico desde diciembre de 2023. Informó que en abril de 2024 había viajado a México para resolver unos asuntos personales y, a su vez, radicar una querella por violencia doméstica en contra de Flores Peña. Por otro lado, arguyó que Flores Peña había cometido abuso sexual en contra de la menor U.I.B.F., por lo que también radicó una querella a esos efectos en la Fiscalía General del Estado de México el 23 de mayo de 2024, la cual se encontró con fundamento por dicho foro. Según adujo, otra sala del foro primario en Puerto Rico le otorgó dos órdenes de protección *ex parte*, al amparo de la *Ley para [la] Prevención de Maltrato, Preservación de la Unidad Familiar y para la Seguridad, Bienestar y Protección de los Menores*, Ley Núm. 57-2023, según enmendada, 8 LPRA sec. 1641 *et seq.* (Ley Núm. 57-2023) y la *Ley para la Prevención e Intervención con la Violencia Doméstica*, Ley Núm. 54 de 15 de agosto de 1989, según enmendada, 8 LPRA sec. 601 *et seq.* (Ley Núm. 54-1989). En virtud de lo anterior, solicitó que se le privara de la patria potestad de la menor U.I.B.F. a Flores Peña, se le otorgara la patria potestad absoluta y la custodia legal permanente de la menor a ella.

Por su parte, el 9 de agosto de 2024, Flores Peña instó una *Urgentísima Moción en Solicitud de Desestimación y Devolución de Menor Conforme al Convenio de la Haya*.[2] En síntesis, arguyó que las partes, así como la menor U.I.B.F., residían en México. Planteó que las partes compartían la patria potestad y la custodia de la menor U.I.B.F., hasta que esta fue sustraída ilegalmente de su país de residencia por Bortolamedi García. Argumentó que era uso y costumbre entre las partes acordar que, en las vacaciones de Navidad durante el mes de diciembre, la menor U.I.B.F. viajara junto

---

[2] Apéndice V del recurso, págs. 25-29.

a Bortolamedi García a Puerto Rico para compartir con su familia materna. Sin embargo, alegó que Bortolamedi García lo engañó y se quedó con la menor en Puerto Rico hasta abril de 2024. Indicó que, cuando estas regresaron a México, tuvo bajo su custodia a la menor desde el 15 de abril de 2024 hasta el 3 de mayo del mismo año y luego de forma alterna hasta el 31 de mayo de 2024. Planteó que, durante ese lapso, llevó como de costumbre a la menor U.I.B.F. a la escuela en su tiempo compartido. Sostuvo que, una vez Bortolamedi García se llevó a la menor U.I.B.F. para disfrutar de la semana que le correspondía, esta cortó comunicación y no supo de ella hasta el 7 de junio de 2024, cuando llamó a Bortolamedi García y esta le indicó que había incoado una denuncia en su contra y que un abogado se comunicaría con él. Según adujo, se enteró que la menor U.I.B.F. estaba en Puerto Rico sin su autorización cuando recibió los documentos de la demanda instada en su contra. Alegó que, previamente, las partes no estaban de acuerdo sobre la custodia de la menor, ya que Bortolamedi García deseaba trasladar a la menor U.I.B.F. a Puerto Rico, por lo que se sometieron a un proceso de mediación con una psicóloga en México. Argumentó que, en aras de obtener un decreto de custodia a su favor y justificar la sustracción ilegal de la menor U.I.B.F. de su país de residencia, Bortolamedi García presentó las denuncias sobre violencia doméstica y abuso sexual, las cuales negaba.

Flores Peña planteó en su petitorio que Bortolamedi García había activado los mecanismos judiciales en México para luego abandonarlos y justificar su solicitud en Puerto Rico. Sostuvo que dichas actuaciones lo ponían es desventaja porque no podía viajar a Puerto Rico a litigar la situación por no ser ciudadano americano y al existir unas denuncias frívolas en México que evitaban que pudiera activar las agencias de seguridad de México para denunciar la sustracción de la menor U.I.B.F. Por otro lado, argumentó que la

jurisdicción de Puerto Rico era general, lo que significaba que, como normal general, podía entender en toda clase de controversia justiciable que surgiera dentro de la extensión territorial de la Isla al amparo de sus leyes. Sostuvo que era de aplicación el Convenio de la Haya, ya que el fin de este era desalentar las substracciones ilegales de un niño o una niña de un país a otro como retenciones ilegales, proveyendo procedimientos que aseguraran que todas las controversias de custodia fueran litigadas en la jurisdicción donde el menor era residente habitual. En vista de lo anterior, solicitó que se desestimara la acción de epígrafe por falta de jurisdicción y en atención al Convenio de la Haya de Derecho Internacional Privado, que la menor U.I.B.F. retornara a México –su país de origen y residencia– para que atendieran los asuntos relacionados a la custodia y patria potestad de esta, por ser el país con jurisdicción y competencia para ello.

Posteriormente, el 3 de septiembre de 2024, se celebró una vista a la cual comparecieron las partes.[3] Surge de la *Minuta* que la representación legal de Flores Peña arguyó que el Estado Libre Asociado de Puerto Rico no tenía jurisdicción en cuanto a las peticiones de órdenes de protección que Bortolamedi García había solicitado en una sala municipal. Reiteró los planteamientos incluidos en su solicitud de desestimación y argumentó que el tribunal superior iba por encima del municipal y que ninguno tenía jurisdicción en el caso porque las alegaciones esbozadas en la acción de epígrafe fueron radicadas en México. Por su parte, la representación legal de Bortolamedi García indicó que no estaba preparada para ver el caso porque no había tenido acceso al expediente. Entendido el asunto, el foro *a quo* le concedió un término

---

[3] Apéndice XVII del recurso, págs. 54-56.

a la representante legal de Bortolamedi García para que se expresara en cuanto al petitorio de desestimación promovido por Flores Peña.

El 10 de septiembre de 2024, Bortolamedi García presentó una *Moción en Cumplimiento de [Orden] y R[é]plica a Moción de Desestimación.*[4] En esencia, sostuvo que el Artículo 3 del Convenio de la Haya no aplicaba en este caso, toda vez que tenía una orden de protección *ex parte* a su favor, al amparo de la Ley Núm. 54-1989, *supra*, y otra a favor de la menor U.I.B.F., a tenor con la Ley Núm. 57-2023, *supra*, sobre lo cual adjuntó evidencia documental y solicitó que se tomara conocimiento judicial. Planteó que el Artículo 13(b) del Convenio de la Haya establecía que no aplicaba el referido Artículo 3 cuando la seguridad física o mental de la menor sufría algún riesgo, por lo que procedía una vista evidenciaria a esos efectos. Alegó que Flores Peña le había admitido que tanto la menor U.I.B.F. como él dormían desnudos juntos. Según adujo, la menor U.I.B.F. le había indicado que: "papá me deja jugar con su pipí cuando estamos desnudos". Arguyó que lo anterior fue aceptado por Flores Peña, quien admitió que la menor "jugaba" con su pene, pero al ser confrontado, se limitó a decir que ya no lo hacía. Añadió que la menor U.I.B.F. le expresó que al "pipí de su papá le sale una agüita" y mostró una conducta sexualizada, como pedirle que le acariciara la vulva. Planteó que, al negarse a realizar lo solicitado, la menor U.I.B.F. se molestó y le cuestionó que por qué no lo hacía "si nadie te[n]ía que enterarse". Argumentó que dichas alegaciones eran serias y que el tribunal no podía despacharlas sin que se pasara prueba al respecto.

Por otro lado, Bortolamedi García alegó que, en diciembre de 2023, había viajado con la menor U.I.B.F. a Puerto Rico con autorización de Flores Peña y que tenía un Poder otorgado por este

---

[4] Apéndice XXI del recurso, págs. 68-78.

autorizándola a viajar sin límite de tiempo con la menor. No obstante, arguyó que, cuando se trataba de la seguridad de un menor, no era necesario ese consentimiento. Planteó que el Artículo 20 del Convenio de la Haya establecía que la restitución de la menor podía denegarse cuando no lo permitieran los principios fundamentales del Estado requerido en materia de protección de los derechos humanos. Sostuvo que el foro primario tenía jurisdicción sobre la persona, porque se emplazó a Flores Peña conforme establece nuestro ordenamiento jurídico, y sobre la materia ya que los Artículos 13(b) y 20 del Convenio de la Haya permitían retener a la menor y mantener la jurisdicción en asuntos sobre custodia y patria potestad. Enfatizó que, contrario a lo propuesto por Flores Peña, la menor U.I.B.F. residía en Puerto Rico desde diciembre de 2023 y atendía una escuela de la Isla desde enero de 2024. De otro lado, indicó que el Artículo 3 del Convenio de la Haya establecía que el derecho de custodia debía surgir de una determinación judicial, administrativa o un acuerdo según el derecho vigente del Estado, pero que, en este caso, no existía decreto y acuerdo alguno a esos efectos.

Evaluadas las posturas de las partes, el 17 de septiembre de 2024, notificada el 19 del mismo mes y año, el Tribunal de Primera Instancia emitió la *Sentencia* que nos ocupa, mediante la cual desestimó la acción de epígrafe, por falta de jurisdicción.[5] Concluyó que, de las actuaciones de las partes surgía claramente que, la residencia habitual de la menor U.I.B.F. era México. Enfatizó que la menor nació en dicho país y era allí donde acudió a una escuela y estuvo bajo la custodia y patria potestad de ambas partes. Determinó que las querellas radicadas por Bortolamedi García en México eran por hechos ocurridos en dicho país, por lo que Puerto

---

[5] Apéndice XIV del recurso, págs. 96-102.

Rico no tenía el alcance ni la jurisdicción para atender en dichos asuntos. Añadió que, como los hechos alegadamente ocurridos fueron en México, debían investigarse y adjudicarse en dicha jurisdicción, donde constituía el lugar de residencia de la menor U.I.B.F. En ese sentido, resolvió que, por el bienestar de la menor U.I.B.F., Bortolamedi García debía regresar a México y continuar los procesos allá. Indicó que, de igual manera, México tenía recursos de protección para ambas. Por otro lado, sin haber celebrado una vista evidenciaria, el foro primario expresó que no surgía de la prueba sometida que Flores Peña autorizara el traslado de la menor o que México no fuera el país de residencia de esta.

En virtud de lo anterior, el foro *a quo* se declaró sin jurisdicción para atender la acción de epígrafe y la desestimó, conforme al derecho internacional privado. En su consecuencia, ordenó la devolución inmediata de la menor U.I.B.F. a México, en aras de que se dilucidaran los asuntos abiertos por Bortolamedi García y pendientes en dicho país. Puntualizó que la referida jurisdicción era la que debía resolver los asuntos relacionados a la custodia, privación de patria potestad y la autorización para el traslado de la menor U.I.B.F.

En desacuerdo, el 4 de octubre de 2024, Bortolamedi García presentó una *Moción Urgente de Reconsideración*,[6] la cual fue declarada No Ha Lugar por el foro apelado el 9 de octubre de 2024, mediante *Orden* notificada al día siguiente.[7]

Inconforme, el 12 de noviembre de 2024, la parte apelante acudió ante esta Curia mediante el recurso de epígrafe y señaló los siguientes errores:

> Erró el [H]onorable Tribunal de Primera Instancia al desestimar el caso de epígrafe por falta de jurisdicción sobre la materia y ordenar el retorno de la menor a México, en contravención a lo establecido en el

---

[6] Apéndice XXV del recurso, págs. 103-114.
[7] Apéndice XXVI del recurso, pág. 124.

[A]rtículo 13 (b) del Convenio de la Haya, al representar el retorno de la menor un grave riesgo a su seguridad.

Erró el Honorable Tribunal de Primera Instancia al dictar la sentencia desestimatoria y hacer determinaciones de hechos sin celebrar una vista evidenciar[i]a, para desfilar prueba de violencia doméstica y abuso sexual de menores, en violación al debido procedimiento de ley.

Erró el [H]onorable Tribunal de Primera Instancia al conceder valor probatorio a documentos anejados a mociones y alegaciones que no constituyen prueba admisible ya que nunca fueron autenticados ni ofrecidos en evidencia, constituyendo esto un abuso de discreción.

En cumplimiento con nuestras *Resoluciones* del 14 de noviembre de 2024 y del 4 de diciembre del mismo año, y luego de varias prórrogas a esos efectos, la parte apelada compareció mediante *Alegato en Oposición [a] Apelación* el 16 de abril de 2025.

Posteriormente, el 9 de mayo de 2025, la parte apelante presentó una *Moción Urgente para que se Tome Conocimiento Judicial.* Indicó que, con anterioridad al caso de epígrafe, había solicitado remedios sobre violencia doméstica y maltrato de menores en otra sala del foro primario, bajo los Casos Núm. SJL572024-0185 y OPA-2024-46082, consolidados, y que el asunto fue resuelto. Informó que el tribunal de instancia expidió dos órdenes de protección finales a favor de esta y la menor U.I.B.F., en contra de la parte apelada, le concedió a esta la custodia de la menor y suspendió las relaciones paternofiliales, por lo que solicitaba que se tomara conocimiento judicial sobre ello. A esos efectos, incluyó junto a su moción ambas órdenes de protección con las certificaciones correspondientes, así como copia del *Informe Social Confidencial para la Vista de Ratificación* (Informe Social).

La apelante especificó que, el 28 de abril de 2025, se celebró una vista evidenciaria en dichos casos, donde las partes y una trabajadora social del Departamento de la Familia testificaron y un juez superior se declaró con jurisdicción sobre la materia y adjudicó

en los méritos. Indicó que el foro juzgador determinó que Flores Peña había cometido violencia doméstica en su contra y actos lascivos en contra de la menor U.I.B.F. Señaló que, del Informe Social confeccionado por la trabajadora social del Departamento de la Familia, se desprendía que la menor U.I.B.F. dijo que: (1) dormía desnuda con Flores Peña; (2) este acercaba su cuerpo desnudo al suyo y esto la incomodaba; (3) jugaba con el pene de este y lo movía hacia adelante y hacia atrás; (4) en una ocasión, Flores Peña se masturbó en su presencia mientras estaba a su lado en la cama durmiendo. Añadió que la referida trabajadora social refirió a la menor U.I.B.F. para validación de abuso sexual a la Universidad Carlos Albizu, cuyo protocolo incluía la suspensión de las relaciones filiales con el agresor.

En su moción ante este Foro, la apelante sostuvo que ya no procedía que se devolviera el caso al Tribunal de Primera Instancia para la celebración de una vista evidenciaria para determinar si aplicaba el Artículo 13(b) del Convenio de la Haya. Argumentó que, el 28 de abril de 2025, se celebró una vista evidenciaria donde un juez superior determinó que esta fue víctima de violencia doméstica y la menor de actos lascivos por Flores Peña. Planteó que, al existir la referida determinación, procedía que esta Curia resolviera que aplicaba el mencionado Artículo del Convenio de la Haya y no procedía el retorno de la menor U.I.B.F. a México, toda vez que ello representaba un riesgo a su seguridad física y emocional.

Por su parte, el 19 de mayo de 2025, la parte apelada presentó una *Moción en Cumplimiento de Orden,* mediante la cual reiteró que el foro *a quo* carecía de jurisdicción sobre la materia para atender la acción de epígrafe. En síntesis, arguyó que no le habían notificado las órdenes de protección en cuestión, que desconocía las determinaciones de hechos de ambas órdenes, que estos dictámenes no se anejaron al escrito presentado por Bortolamedi García y que

pretendía apelarlos. Alegó que Bortolamedi García había admitido que tenía medidas de protección en México y que ello era evidencia suficiente para que no se activara la excepción del Artículo 13(b) del Convenio de la Haya. Abundó que el hecho de que el tribunal municipal otorgara unas órdenes de protección por un breve periodo no obviaba el hecho de que Bortolamedi García tenía medidas de protección a su favor en México. Alegó que ello implicaba que no existía situación alguna de riesgo para ella y la menor U.I.B.F., por lo que no se justificaba la sustracción ilegal de esta última. De otro lado, adujo que no existía determinación alguna de abuso sexual ni actos lascivos por su parte en contra de la menor U.I.B.F. Señaló que la recomendación de la trabajadora social era que se enviara a validar o descartar dicha alegación, pero que la investigación realizada por esta no contó con su información ya que no fue entrevistado por la agencia. Abundó que la trabajadora social había indicado que lo único que validó la menor U.I.B.F. no era abuso sexual y había que evaluar si se trataba de una cuestión cultural. Arguyó que ello era un asunto que debía resolverse en México, país de residencia de la menor.

En respuesta, el 21 de mayo de 2025, Bortolamedi García presentó una *Moción Urgente de Réplica a Moción en Cumplimiento de Orden*. En esencia, alegó que las órdenes de protección fueron notificadas a las partes y a sus representantes legales el mismo día de la vista en su fondo y que estas fueron anejadas a su moción previa ante este Tribunal revisor. Indicó que el término para presentar una solicitud de reconsideración de ambos dictámenes había vencido sin que Flores Peña solicitara remedio a esos efectos y que estos advenían finales y firmes el 28 de mayo de 2025. Por otro lado, alegó que los planteamientos esbozados por Flores Peña sobre los hallazgos de la trabajadora social del Departamento de la Familia eran falsos y de fácil corroboración al examinar el Informe

Social que obraba en autos. En virtud de lo anterior, y luego de reiterar sus alegaciones previas, solicitó que se tomara conocimiento judicial de las órdenes de protección expedidas a su favor y el de la menor U.I.B.F., conforme a las Reglas de Evidencia de Puerto Rico, 32 LPRA Ap. VI.

Con el beneficio de la comparecencia de las partes, así como con la transcripción de la prueba oral, procedemos a resolver.

**II**

**A**

La jurisdicción es el poder o autoridad de un tribunal para considerar y decidir casos y controversias. *R&B Power, Inc. v. Junta de Subasta ASG,* 213 DPR 685 (2024); *FCPR v. ELA et al.,* 211 DPR 521 (2023); *MCS Advantage v. Fossas Blanco et al.,* 211 DPR 135 (2023); *Cobra Acquisitions v. Mun. Yabucoa et al.,* 210 DPR 384 (2022). Es por ello que, la falta de jurisdicción de un tribunal incide directamente sobre el poder mismo para adjudicar una controversia. *Allied Mgmt. Group v. Oriental Bank,* 204 DPR 374, 386 (2020). Por tal razón, es norma reiterada que los tribunales son celosos guardianes de su jurisdicción y que tienen el deber ineludible de auscultar dicho asunto con preferencia a cualesquiera otros. *R&B Power, Inc. v. Junta de Subasta ASG,* supra; *Pueblo v. Torres Medina,* 211 DPR 950 (2023).

De ese modo, la ausencia de jurisdicción trae varias consecuencias, tales como: (1) que no sea susceptible de ser subsanada; (2) las partes no puedan conferírsela voluntariamente a un tribunal como tampoco puede este arrogársela; (3) conlleva la nulidad de los dictámenes emitidos; (4) impone a los tribunales el ineludible deber de auscultar su propia jurisdicción; (5) obliga a los tribunales apelativos a examinar la jurisdicción del foro de donde procede el recurso; y (6) puede presentarse en cualquier etapa del

procedimiento, a instancia de las partes o por el tribunal *motu proprio*. *Allied Mgmt. Group v. Oriental Bank*, supra.

En ese sentido, en reiteradas ocasiones el Tribunal Supremo de Puerto Rico ha expresado que los tribunales tenemos el deber de proteger nuestra jurisdicción sin poseer discreción para asumirla donde no la hay. *Pueblo v. Ríos Nieves*, 209 DPR 264 (2022). Por tanto, si un tribunal carece de jurisdicción, solo resta así declararlo y desestimar la reclamación sin entrar en los méritos de la controversia. *Municipio de Aguada v. W. Construction, LLC y otro*, 2024 TSPR 69, resuelto el 21 de junio de 2024; *R&B Power, Inc. v. Junta de Subasta ASG*, supra; *Mun. de San Sebastián v. QMC Telecom*, 190 DPR 652, 660 (2014). A esos efectos, las cuestiones de jurisdicción son de índole privilegiada y deben ser resueltas con preferencia. *Íd.*; *Pueblo v. Ríos Nieves*, supra; *FCPR v. ELA et al.*, supra.

**B**

Según el derecho internacional privado, cada jurisdicción goza de una soberanía jurídica, la cual va en contra de la validez automática de sentencias dictadas en otros estados o países. *Rodríguez Contreras v. E.L.A.*, 183 DPR 505, 514 (2011). Ahora bien, el *Convenio de la Haya sobre los Aspectos Civiles de la Sustracción Internacional de Menores* (Convenio de la Haya) fue adoptado el 25 de octubre de 1980 en la Conferencia de la Haya sobre Derecho Internacional Privado, con el objetivo de proteger a los menores a nivel internacional de los efectos perjudiciales que podría ocasionarle un traslado o retención ilegal y velar porque los derechos de custodia y de visita provistos por un Estado contratante, se respeten en los demás Estados contratantes. La Convención ha sido definida como procesal y jurisdiccional, pues no ofrece parámetros internacionales uniformes para determinar los derechos de custodia. *De Los Ríos v. Meléndez*, 141 DPR 282, 316-317 (1996)

(Sentencia). Este Tratado permite que todas las controversias de custodia sean litigadas en la jurisdicción donde el menor es un residente habitual. *Íd.*, pág. 317. Los países que se unen a la Convención acuerdan devolver a todos los menores que han sido sustraídos o retenidos ilícitamente al estado de su residencia habitual. *Íd.*

El Artículo 3 del referido Convenio dispone que un traslado se considerará ilegal en las siguientes circunstancias:

a) Cuando se hayan producido con infracción de un derecho de custodia atribuido, separada o conjuntamente, a una persona, a una institución, o a cualquier otro organismo, con arreglo al derecho vigente en el Estado en que el menor tenía su residencia habitual inmediatamente antes de su traslado o retención; y

b) Cuando este derecho se ejercía en forma efectiva, separada o conjuntamente, en el momento del traslado o de la retención, o se habría ejercido de no haberse producido dicho traslado o retención.

De la misma forma, el Artículo 17 del Convenio de la Haya, *supra,* indica que la existencia de una decisión sobre custodia en el estado en que se encuentran los menores ilegalmente sustraídos no debería ser motivo para denegar la orden de retorno del menor. Así pues, las sentencias dictadas en contravención de este Tratado no pueden modificar el lugar de residencia habitual del menor. El Convenio de la Haya se aplicará a todo menor que tuviera su residencia habitual en un Estado contratante inmediatamente antes de la infracción de los derechos de custodia o de visita. Art. 4 del Convenio de la Haya, *supra.*

Ahora bien, el Artículo 13 del Convenio de la Haya, *supra,* dispone que la autoridad judicial o administrativa del Estado requerido no está obligada a ordenar la restitución del menor si la persona, institución u otro organismo que se opone a su restitución demuestra que:

a) [L]a persona, intuición u organismo que se hubiera hecho cargo de la persona del menor no ejercía de

modo efectivo el derecho de custodia en el momento en que fue trasladado o retenido o había consentido o posteriormente aceptado el traslado o retención; o

**b) [E]xiste un grave riesgo de que la restitución del menor lo exponga a un peligro físico o psíquico o que de cualquier otra manera ponga al menor en una situación intolerable.**

La autoridad judicial o administrativa podrá asimismo negarse a ordenar la restitución del menor si comprueba que el propio menor se opone a la que resulta apropiado tener en cuenta sus opiniones.

Al examinar las circunstancias a que se hace referencia en el presente Artículo, las autoridades judiciales y administrativas tendrán en cuenta la información que sobre la situación social del menor proporcione la Autoridad Central u otra autoridad competente del lugar de residencia habitual del menor.

Para determinar la existencia de un traslado o de una retención ilícitos en el sentido del Artículo 3, las autoridades judiciales o administrativas del Estado requerido podrán tener en cuenta directamente la legislación y las decisiones judiciales o administrativas, ya estén reconocidas formalmente o no en el Estado de la residencia habitual del menor, sin tener que recurrir a procedimientos concretos para probar la vigencia de esa legislación o para el reconocimiento de las decisiones extranjeras que[,] de lo contrario[,] serían aplicables. (Énfasis nuestro).

Por su parte, el *International Child Abduction Remedies Act*, 22 USC sec. 9001 *et seq.* (ICARA), fue promulgado con el propósito de definir el procedimiento a seguir para la implementación del Convenio de la Haya en los Estados Unidos. Según este estatuto, la parte peticionaria establece un caso *prima facie* de remoción ilegal demostrando, por preponderancia de la evidencia, que: (1) el país extranjero era la residencia habitual del menor justo antes de la fecha de su traslado; (2) la remoción violó los derechos de custodia de la parte peticionaria bajo las leyes del país extranjero, y (3) la parte peticionaria ejercitaba la custodia del menor al momento de la remoción. 42 USC sec. 9003(e).

A la luz de la normativa antes expuesta, procedemos a disponer de la controversia ante nuestra consideración.

**III**

La parte apelante plantea en su primer señalamiento de error que el Tribunal de Primera Instancia incidió al desestimar la acción de epígrafe por falta de jurisdicción sobre la materia y ordenar el retorno de la menor U.I.B.F. a México, en contravención a lo establecido en el Artículo 13(b) del Convenio de la Haya, *supra*, toda vez que el retorno de la menor representa un grave riesgo a su seguridad. Como segundo señalamiento de error, sostiene que el foro primario erró al dictar una sentencia desestimatoria y hacer determinaciones de hechos sin celebrar una vista evidenciaria para desfilar prueba sobre la alegada violencia doméstica y abuso sexual de menores, en violación al debido procedimiento de ley. En su tercer y último señalamiento de error, arguye que el foro *a quo* incidió al conceder valor probatorio a documentos anejados a mociones y alegaciones que no constituyen prueba admisible, ya que nunca fueron autenticados ni ofrecidos en evidencia, constituyendo un abuso de discreción. Por estar relacionados entre sí, discutiremos los errores en conjunto.

Según esbozamos, el *Convenio de la Haya sobre los Aspectos Civiles de la Sustracción Internacional de Menores* (Convenio de la Haya) fue adoptado con el objetivo de proteger a los menores a nivel internacional de los efectos perjudiciales que podría ocasionarle un traslado o retención ilegal y velar porque los derechos de custodia y de visita provistos por un Estado contratante. Este Tratado permite que todas las controversias de custodia sean litigadas en la jurisdicción donde el menor es un residente habitual. En ese sentido, el Convenio de la Haya se aplicará a todo menor que tuviera su residencia habitual en un Estado contratante inmediatamente antes de la infracción de los derechos de custodia o de visita. Ahora bien, el Artículo 13 del Convenio de la Haya, *supra*, dispone que la autoridad judicial o administrativa del Estado requerido no está

obligada a ordenar la restitución del menor si la persona, institución u otro organismo que se opone a su restitución demuestra que existe un grave riesgo de que la restitución del menor lo exponga a un peligro físico o psíquico o que de cualquier otra manera ponga al menor en una situación intolerable.

En el caso de autos, el Tribunal de Primera Instancia determinó que: (1) México era la residencia habitual de la menor U.I.B.F.; (2) las querellas radicadas por Bortolamedi García en México eran por hechos ocurridos en dicho país, por lo que Puerto Rico no tenía el alcance ni la jurisdicción para atender en dichos asuntos; (3) los hechos alegadamente ocurridos fueron en México, debían investigarse y adjudicarse en dicha jurisdicción; (4) Bortolamedi García debía regresar a México y continuar los procesos allá, por el bienestar de la menor U.I.B.F.; (5) México tenía recursos de protección para ambas; (6) no surgía de la prueba sometida que Flores Peña autorizara el traslado de la menor o que México no fuera el país de residencia de esta. Sin embargo, el foro primario llegó a las citadas conclusiones sin haber celebrado una vista evidenciaria. Es decir, tales determinaciones surgieron de meras alegaciones. Contrario a lo resuelto por el foro juzgador, lo que procedía en este caso era celebrar una vista evidenciaria con el fin de determinar si existía un grave riesgo de que la restitución de la menor U.I.B.F. a México la expusiera a un peligro físico o psíquico o que  ualquierr otra manera la pusiera en una situación intolerable, conforme requiere el inciso (b) del Artículo 13 del Convenio de la Haya, *supra.*

Ahora bien, pendiente de adjudicación, la parte apelante presentó ante nos, mediante una *Moción Urgente para que se Tome Conocimiento Judicial*, dos órdenes de protección finales en los Casos Núm. SJL572024-0185 y OPA-2024-46082, consolidados, sobre los cuales tomamos conocimiento judicial. En específico, una

sala municipal del tribunal de instancia emitió una orden de protección a favor de la menor U.I.B.F. y otra a favor de Bortolamedi García, además de otorgarle a este última la custodia provisional de la menor y suspender las relaciones paternofiliales. En lo aquí atinente, el foro juzgador celebró una vista en su fondo donde se desfiló prueba para dilucidar dos solicitudes de órdenes de protección, una por violencia doméstica y otra por maltrato de menores en contra de Flores Peña. A dicha vista comparecieron ambas partes y testificó una trabajadora social del Departamento de la Familia sobre los hallazgos de su investigación social.[8] Ponderado lo anterior, el tribunal juzgador determinó que: (1) durante la relación entre las partes, Flores Peña se tornó violento con Bortolamedi García y le gritaba; (2) varios de los eventos de violencia ocurrieron en presencia de la menor U.I.B.F.; (3) Flores Peña le profirió palabras soeces, humillantes e hirientes a Bortolamedi García, a quien también empujó; (4) Flores Peña continuó enviándole mensajes a Bortolamedi García luego de esta haber llegado a Puerto Rico, mediante los cuales la intimida y la hace sentir incómoda; (5) Bortolamedi García teme por su seguridad y la de la menor U.I.B.F. Asimismo, el foro de instancia determinó que, de la prueba surgía que, Flores Peña cometió actos lascivos en contra de la menor U.I.B.F.

Ante tal escenario, donde otra sala del foro primario celebró una vista en su fondo sobre hechos que inciden en el caso de epígrafe, colegimos que no es necesaria la celebración de una vista evidenciaria en el presente caso. La existencia de una orden de protección a favor de la menor U.I.B.F. y otra a favor de su madre custodia, en contra del apelado, evidentemente refleja la existencia de un grave riesgo de que la restitución de la menor a México la

---

[8] Cabe destacar que Flores Peña compareció mediante videoconferencia.

exponga a un grave peligro físico o psíquico. Luego de desfilada prueba a esos efectos en una vista en su fondo, un tribunal de menor jerarquía otorgó credibilidad a los planteamientos sometidos por la aquí apelante, al punto de otorgar dos órdenes de protección, conceder la custodia provisional a la apelante y suspender las relaciones filiales. Por consiguiente, aplica la excepción consagrada en el Artículo 13(b) del Convenio de la Haya, *supra*, y no procede la restitución de la menor U.I.B.F. a México.

Contrario a lo expresado por el Tribunal de Primera Instancia en la determinación apelada, en la acción de epígrafe no se pretende enjuiciar criminalmente al apelado por presuntos hechos ocurridos en México. Ello, en efecto, es algo que le compete a las autoridades de México, quienes tienen ante sí sendas querellas radicadas por Bortolamedi García a esos fines. El remedio que solicitó la apelante ante los tribunales de Puerto Rico es sobre la custodia y privación de patria potestad de la menor U.I.B.F., quien actualmente reside en Puerto Rico. Es decir, los tribunales de la Isla ostentan jurisdicción para adjudicar tales materias. Nada impide que se utilicen mecanismos tecnológicos como las videoconferencias, entre otros, para realizar el descubrimiento y desfile de prueba, así como para que el apelado exponga sus posturas y confronte la prueba que se presente en su contra, tal y como efectivamente hizo en los Casos Núm. SJL572024-0185 y OPA-2024-46082, representado por una abogada admitida al ejercicio de la profesión en la Isla. Luego de la emergencia de salud pública que enfrentó Puerto Rico como consecuencia de la pandemia del COVID-19, tanto el Poder Judicial, como las demás agencias de gobierno, cuentan con los recursos tecnológicos, y demás, necesarios para salvaguardar el debido proceso de ley en situaciones como esta, donde una de las partes se encuentra fuera de Puerto Rico, en aras de proteger el interés óptimo de la menor envuelta.

Sabido es que los tribunales, en su poder de *parens patrie*, deben solventar los pleitos sobre patria potestad y custodia tras un análisis objetivo, sereno y cuidadoso de todas las circunstancias, con el único y principal objetivo de velar por el interés óptimo del menor de edad. *Ortiz v. Meléndez*, 164 DPR 16, 26-27 (2005); *Santana Medrano v. Acevedo Osorio*, 116 DPR 298, 301 (1985); Véase, Art. 604 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 7283. En este caso, un tribunal de menor jerarquía, quien merece igual deferencia que cualquier otro foro judicial, ejerció dicho poder ante el evidente riesgo grave a su integridad física y mental al que se expondría la menor U.I.B.F. si fuera restituida a México. En virtud de ello, concluimos que, por vía excepcional, aplica el inciso (b) del Artículo 13 del Convenio de la Haya, *supra*. En consecuencia, procede revocar el dictamen apelado y que el foro *a quo* continue con los trámites ordinarios de la acción de epígrafe sin relegar el interés óptimo de la menor U.I.B.F.

**IV**

Por los fundamentos que anteceden, revocamos el dictamen apelado y devolvemos el caso al foro primario para la continuación de los procedimientos conforme a lo aquí resuelto.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

La juez Ortiz Flores disiente sin voto escrito.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones