Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL (X)
DJ 2024-062C

| | | |
|---|---|---|
| CRISTINA MARÍA RIVERA RODRÍGUEZ<br><br>Apelante<br><br><br>v.<br><br><br>HÉCTOR IVÁN PÉREZ RIVERA<br><br>Apelada | TA2025AP00551 | APELACIÓN<br>Procedente del Tribunal de Primera Instancia, Sala de Familia y Menores<br><br>Civil núm.: BY2025RF00177<br><br>Sobre: Custodia-Monoparental o Compartida, Alimentos- Menores de Edad |

Panel integrado por su presidenta la juez Lebrón Nieves, la jueza Romero García y el juez Rivera Torres

**Rivera Torres, Juez Ponente**

### SENTENCIA

En San Juan, Puerto Rico, a 27 de enero de 2026.

Comparece ante este tribunal apelativo, la Sra. Cristina María Rivera Rodríguez (señora Rivera Rodríguez o apelante) mediante el recurso de apelación de epígrafe solicitándonos que revoquemos la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón (TPI), el 23 de septiembre de 2025, notificada el día siguiente. Mediante este dictamen, el foro primario se declaró sin jurisdicción tras determinar que el estado de Florida constituye la residencia habitual del menor (*home state*).

Por los fundamentos que expondremos a continuación, determinamos confirmar el dictamen apelado.

### I.

El 3 de febrero de 2025, la señora Rivera Rodríguez presentó una demanda contra el Sr. Héctor Iván Pérez Rivera (señor Pérez Rivera o apelado) solicitando la custodia, patria potestad, derechos paternofiliales y pensión alimenticia del hijo, menor de edad,

procreado por ambos, Evan Andrés Pérez Rivera. En esta, se informó del reciente traslado del menor, por diversas razones, del estado de Florida a Puerto Rico. Así, se incluyó en la súplica la imposición de una orden solicitando la prohibición de traslado del menor fuera de la jurisdicción de Puerto Rico.[1]

Por su parte, del expediente apelativo surge que, el 7 de febrero de 2025, el señor Pérez Rivera incoó una demanda ante el tribunal del estado de la Florida, caso Núm. 2025-DR-000523, en contra de la apelante en el que solicitó, entre otras peticiones, establecer paternidad y custodia.[2] Además, el 13 de febrero de 2025 el Juez Hal. C. Epperson Jr. Emitió un *ORDER DIRECTING THE RESPONDENT, CHRISTINA RODRÍGUEZ, TO RETURN THE MINOR CHILD DESCRIBED HEREIN TO OSCEOLA COUNTY, THE STATE OF FLORIDA, AND TO PLACE THE CHILD INTO THE INMEDIATE CUSTODY OF THE PETICIONER, HECTOR RIVERA, WITHIN SEVEN DAYS OF THIS ORDER*, en la que consignó que el peticionario (aquí apelado) instó el referido caso indicando que el menor reside en Osceola County desde su nacimiento y es allí donde están la escuela, sus doctores y amigos. Asimismo esbozó que, el 27 de enero de 2025, la señora Rivera Rodríguez, sin el consentimiento del apelado y sin autorización del tribunal removió el menor del programa escolar. Además, expuso que el 3 de febrero de 2025, ella sin conocimiento o autorización del señor Pérez Rivera o de la corte, se mudó con el menor a Puerto Rico. Por lo que, a tenor con la ley estatal de Florida, asumió jurisdicción sobre la materia, el menor y sus padres. Asimismo, ordenó a la señora Rivera Rodríguez, conforme a la moción de emergencia instada por el apelado, devolver el menor a la custodia del señor Pérez Rivera en Osceola County, dentro del

---

[1] Véase, el Sistema Unificado de Manejo y Administración de Casos del Tribunal de Primera Instancia (SUMAC TPI), Entrada núm. 1.

[2] Sistema Unificado de Manejo y Administración de Casos del Tribunal de Apelaciones (SUMAC TA), Entrada núm. 3.

término de siete (7) días, a partir del día de la emisión de la Orden. Además, el juez especificó que retenía la jurisdicción para hacer cumplir esta y todas las demás órdenes.

Luego de varios incidentes procesales, innecesarios pormenorizar, el 14 de febrero de 2025, el TPI emitió una *Orden* prohibiendo la salida del menor de la jurisdicción de Puerto Rico sin autorización expresa de ambos padres o del tribunal.[3] Ello, amparado en la legislación federal conocida como "Parental Kidnapping Prevention Act". Se hace importante indicar que, ese mismo día, el abogado del apelado presentó ante el tribunal federal este dictamen.

Más tarde, en la misma fecha, el foro *a quo* emitió otra *Orden* dejando sin efecto la anterior en la que se prohibía la salida del menor de Puerto Rico. Mediante esta determinación, el tribunal apelado dictaminó lo siguiente:

> Luego de sostener una conversación telefónica con el Honorable Juez Hal. C. Epperson Jr., Juez de Circuito del Noveno Circuito Judicial del Condado de Osceola en la Florida, EE.UU., así como luego de estudiar el contenido del documento titulado **ORDER DIRECTING THE RESPONDENT, CHRISTINA RODRÍGUEZ, TO RETURN THE MINOR CHILD DESCRIBED HEREIN TO OSCEOLA COUNTY, THE STATE OF FLORIDA, AND TO PLACE THE CHILD INTO THE INMEDIATE CUSTODY OF THE PETICIONER, HÉCTOR RIVERA, WITHIN SEVEN DAYS OF THIS ORDER**, **se deja sin efecto la Orden emitida en el día de hoy 14 de febrero de 2025 en el presente caso**, mediante la cual se prohibía la salida del menor de la jurisdicción de Puerto Rico. Ello luego de validar que el "home state" y, por consiguiente, quien tiene jurisdicción sobre el menor es el Estado de Florida.
>
> Por consiguiente, no existe impedimento alguno, dentro de los procesos del presente caso, para que la Sra. Cristina María Rivera Rodríguez pueda cumplir con la Orden emitida por el Honorable Juez Hal. C. Epperson Jr.[4]

---

[3] SUMAC TPI, Entrada núm. 9. Se notificó el mismo día.
[4] SUMAC TPI, Entrada núm. 10. Énfasis y subrayado en el original. Se notificó ese mismo día a las 5:15 de la tarde.

Inconforme con la referida decisión, el 18 de febrero de 2025, la apelante presentó un *Escrito en Solicitud de Reconsideración de Orden Enmendada*[5] en la cual arguyó, entre otros asuntos, que:

(1) La demanda de epígrafe se instó primero que la de Florida.

(2) La apelante no ha sido emplazada en el caso de Florida ni se le ha notificado de orden alguna emitida en Florida.

(3) El apelado había autorizado previamente el traslado del menor y, ahora, cambiaba de opinión tras la presentación de la demanda.

(4) En este caso, se cumplen los cuatro (4) elementos que permiten al TPI adquirir jurisdicción, primero, porque no existía orden o caso previo a la presentación de la demanda en Puerto Rico. Segundo, la conexión afectiva del menor con sus hermanos y otros parientes, residentes todos en Puerto Rico y, la alegada concurrencia de visitas del demandado a la isla. Tercero, que existe una emergencia por miedo de la demandante para con el demandado por alegada conducta agresiva y supuestas amenazas. Finalmente, que los tribunales en Puerto Rico son el foro más apropiado al poseer un tribunal especializado en asuntos de familia y menores, contrario a los tribunales en el estado de Florida.[6]

Asimismo, se arguyó que el TPI no puede dar entera fe y crédito a una Orden de un tribunal que no ha sido notificada a la parte, ni para la cual no se le ha brindado la oportunidad de ser escuchada, a excepción de las órdenes *ex parte*.

Ese mismo día, 18 de febrero de 2025, el TPI emitió una *Resolución* sobre la moción de reconsideración. En esta, el foro primario determinó que, al momento de instar la demanda de epígrafe, **el menor solo llevaba once (11) días en Puerto Rico, luego de haber vivido toda su vida en Florida**. De manera que el estado de residencia habitual del menor era Florida, cuyos tribunales ostentaban la jurisdicción sobre el caso. A su vez, precisó que los argumentos sobre la violación al debido proceso de ley debían ser levantados en el tribunal de Florida. Por lo que, declaró *No Ha Lugar* a la reconsideración.[7]

El 19 de febrero de 2025, el magistrado federal emitió una orden señalando una vista de estado de emergencia para el 21 de febrero posterior, a celebrarse mediante videoconferencia.

---

[5] SUMAC TPI, Entrada núm. 11.
[6] *Íd.*, a las págs. 3-4.
[7] SUMAC TPI, Entrada núm. 12.

Luego de varios incidentes procesales, incluyendo recursos discrecionales ante los foros apelativos, el 23 de septiembre de 2025, notificada al día siguiente, el TPI emitió la *Sentencia Final* apelada.[8] Mediante esta, determinó que carecía de jurisdicción sobre la materia como consecuencia de lo determinado en la *Orden* del 14 de febrero de 2025.

Aún en desacuerdo con lo determinado por el foro primario, la apelante recurre ante esta *Curia* mediante el recurso de apelación de epígrafe, imputándole al TPI haber incurrido en los siguientes errores:

> ERRÓ EL TPI AL SOSTENER CONVERSACIONES EX- PARTE CON LOS REPRESENTANTES LEGALES DE LA PARTE RECURRIDA Y EL HONORABLE JUEZ HAL C. EPPERSON JR. Y EN DARLE ENTERO CRÉDITO A LO QUE LE INDIC[Ó] EL JUEZ DE FLORIDA, SIN REALIZAR LA CORRESPONDIENTE INVESTIGACIÓN JUDICIAL O VISTA.

> ERRÓ EL TPI AL ORDENAR EL CUMPLIMIENTO CON ORDEN EMITIDA POR EL TRIBUNAL DEL ESTADO DE LA FLORIDA, SIN QUE DICHO FORO HAYA OBTENIDO JURISDICCIÓN SOBRE LA PARTE PETICIONARIA Y SIN TENER JURISDICCIÓN O AUTORIZACIÓN PARA ORDENAR EL CUMPLIMIENTO DE UNA ORDEN DE UN TRIBUNAL FUERA DE PUERTO RICO. LA MISMA JUEZ DECLAR[Ó] NO HA LUGAR EL EXEQUATUR POR FALTA DE JURISDICCIÓN DEL TRIBUNAL DE FLORIDA.

> ERRÓ EL TPI AL NO CELEBRAR UNA VISTA EVIDENCIARIA PREVIO AL DICTAMEN DE LA SENTENCIA EMITIDA EL 23 DE SEPTIEMBRE DE 2025, DONDE SE VENTILA LOS MÉRITOS DE LA DEMANDA DONDE SE AL[E]GA QUE EL DEMANDADO AUTORIZ[Ó] LA SALIDA DEL MENOR HACIA PUERTO RICO; VIOLENCIA DOMÉSTICA, EL APELADO NO TIENE UNA ORDEN DE PATERNIDAD, ETC.

El 21 de noviembre de 2025, emitimos una *Resolución* concediéndole a la parte apelada, hasta el 17 de diciembre de 2025, para expresarse. El 16 de diciembre, el apelado cumplió con lo ordenado por lo que nos damos por cumplidos y; a su vez, decretamos perfeccionado el recurso.

Analizados los escritos de las partes; así como estudiado el derecho aplicable, procedemos a resolver.

## II.

### *Parental Kidnapping Prevention Act*

Nuestro Tribunal Supremo ha establecido que los casos relacionados al derecho de familia están investidos del más alto interés

---

[8] SUMAC TPI, Entrada núm. 38.

público y tienen carácter *sui géneris*. *Figueroa v. Del Rosario*, 147 DPR 121, 128 (1998). Los tribunales, en su poder de *parens patrie*, deben solventar los pleitos sobre patria potestad y custodia tras un análisis objetivo, sereno y cuidadoso de todas las circunstancias, con el único y principal objetivo de velar por el interés óptimo del menor de edad. *Ortiz v. Meléndez*, 164 DPR 16, 26-27 (2005); *Santana Medrano v. Acevedo Osorio*, 116 DPR 298, 301 (1985); Véase, Artículo 604 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 7283. El interés óptimo del menor es un criterio cardinal en la determinación del domicilio del menor ante desacuerdos entre los progenitores, en las medidas provisionales relacionadas con los menores ante el divorcio de los progenitores y otras acciones que vinculan a los menores. M. Fraticelli Torres, *Las instituciones familiares en el nuevo Código Civil*, en *El Código Civil de Puerto Rico de 2020: primeras impresiones*, San Juan: Fideicomiso para la Escuela de Derecho de la Universidad de Puerto Rico, 2021, pág. 99. Además, el poder de *parens patrie* faculta limitar los derechos de otras partes para proteger al menor de edad, quien pertenece a uno de los sectores más débiles de la sociedad y no puede abogar por su propio bienestar. *Ortiz v. Meléndez, supra*, pág. 27.

La jurisdicción de un tribunal para atender un pleito relacionado a custodia afianza la complejidad que encaran estos casos. R. Serrano Geyls, *Derecho de familia de Puerto Rico y legislación comparada*, Vol. II, San Juan: EJC Univ. Inter. PR, 2002, pág. 1327. Pues, "[l]a naturaleza de los conflictos sobre la custodia y las relaciones filiales pueden generar situaciones en las que varias jurisdicciones tengan contacto con el menor y sus progenitores". *Íd.*

Con el fin de atender los conflictos jurisdiccionales, el Congreso de Estados Unidos aprobó el *Parental Kidnapping Prevention Act* (PKPA), 42 USC sec. 653 *et seq.* Dicho estatuto ocupa el campo en decretos interestatales de custodia, *Santiago v. Kabuka*, 166 DPR 526,

534 (2005), y es aplicable a Puerto Rico. *Cancel Rivera v. González Ruiz, supra*, en la pág. 330. "El PKPA ordena a los tribunales a reconocer entera fe y crédito a los decretos de custodia de otros estados o jurisdicciones, siempre que éstos hayan sido admitidos consecuentemente con las disposiciones del estatuto y el foro original continúe teniendo jurisdicción sobre la materia de custodia del menor". *Santiago v. Kabuka, supra*. Este estatuto estableció un esquema de preferencia jurisdiccional cuando los progenitores están en distintas jurisdicciones, excepto en eventualidades de emergencia. Se basa en cuatro factores en el siguiente orden preferencial: (1) estado de residencia habitual del menor, (2) contactos significativos con el menor o sus progenitores, (3) jurisdicción residual cuando no existe otro estado con jurisdicción o ha declinado ejercerla y (4) situaciones en las que el menor se encuentra en emergencia. *Íd.*, a la pág. 535; *Collazo Dragoni v. Noceda González*, 198 DPR 476, 484 (2017); R. Serrano Geyls, *op. cit.*, pág. 1328. Así, el referido estatuto preceptúa que:

> (c) A child custody or visitation determination made by a court of a State is consistent with the provisions of this section only if:
>
> (1) such court has jurisdiction under the law of such State; and
> (2) one of the following conditions is met:
>
> **(A) such State (i) is the home State of the child on the date of the commencement of the proceeding, or (ii) had been the child's home State within six months before the date of the commencement of the proceeding and the child is absent from such State because of his removal or retention by a contestant or for other reasons, and a contestant continues to live in such State;**
>
> (B) (i) it appears that no other State would have jurisdiction under subparagraph (A), and (ii) it is in the best interest of the child that a court of such State assume jurisdiction because (I) the child and his parents, or the child and at least one contestant, have a significant connection with such State other than mere physical presence in such State, and (II) there is available in such State substantial evidence concerning the child's present or future care, protection, training, and personal relationships;

(C) the child is physically present in such State and (i) the child has been abandoned, or (ii) **it is necessary in an emergency to protect the child because the child, a sibling, or parent of the child has been subjected to or threatened with mistreatment or abuse;**

(D)

(i) it appears that no other State would have jurisdiction under subparagraph (A), (B), (C), or (E), or another State has declined to exercise jurisdiction on the ground that the State whose jurisdiction is in issue is the more appropriate forum to determine the custody or visitation of the child, and (ii) it is in the best interest of the child that such court assume jurisdiction; or

(E) the court has continuing jurisdiction pursuant to subsection (d) of this section.

(. . .)

(d) The jurisdiction of a court of a State which has made a child custody or visitation determination consistently with the provisions of this section continues as long as the requirement of subsection (c)(1) of this section continues to be met and such State remains the residence of the child or of any contestant. 28 USCA sec. 1738A(c) y (d). (Énfasis nuestro)

El PKPA dispone, como **jurisdicción preferencial, el estado de residencia habitual del menor**. *Santiago v. Kabuka, supra*, a la pág. 536; *Cancel Rivera v. González Ruiz, supra*, a la pág. 333; *Ortega, Jr. v. Morales Ortega*, 131 DPR 783, 791 (1992). La jurisprudencia ha definido el estado de residencia habitual como el lugar donde el niño o la niña ha hecho amistades, asiste a la escuela, recibe asistencia médica y su vida se ha desarrollado. *Ortega, Jr. v. Morales Ortega*, supra. Por ello, se entiende que en el estado residencia del menor es donde con mayor probabilidad está disponible la evidencia que se requiere para hacer una adecuada determinación de custodia. Según el PKPA, el *home state* es aquel estado o jurisdicción en la que el menor haya vivido con uno o ambos padres, o con un tutor, **al menos durante seis (6) meses consecutivos antes de la fecha de inicio de los procedimientos de custodia o fijación de derechos de visita.** 28 USCA sec. 1738A, inciso (b)(4). (Traducción

del Tribunal Supremo en *Cancel Rivera v. González Ruiz,* supra, a la pág. 333).

Inicialmente nuestro Tribunal Supremo destacó que, de existir conflicto con respecto a cuál es el requisito jurisdiccional aplicable de acuerdo con el PKPA, **siempre deberá prevalecer el del estado residencia del menor**. Esto responde a que el foro que haga la determinación de custodia no puede ser aquel que convenga más a los padres, sino el que mejor sirva a los intereses del menor. *Ortega, Jr. v. Morales Ortega, supra,* a la pág. 792.

**III.**

En esencia, la apelante planteó en los primeros dos (2) señalamientos de error que erró el TPI al dar entero fe y crédito a una orden, a su entender, emitida sin jurisdicción por el tribunal del estado de Florida y al tomar conocimiento de esta mediante una conversación por llamada telefónica con el juez federal que la dictó. Asimismo, en el tercer señalamiento de error le imputó al foro primario haber incurrido al desestimar la demanda sin ordenar una vista evidenciaria, tras alegar que el apelado autorizó el traslado del menor a Puerto Rico, violencia doméstica, y que este no tiene una orden de paternidad.

Entre sus argumentos, la apelante aduce que la demanda en Puerto Rico se instó primero que la de Florida y que, desde el inicio del pleito a la actualidad, el menor cumpliría con el requisito de residencia de más de seis (6) meses. De manera que, a su entender, Puerto Rico podía adquirir jurisdicción preferencial sobre el estado de Florida. A su vez, argumentó que no había sido emplazada en el pleito instado en Florida, por lo que razona que las órdenes emitidas por el tribunal federal eran nulas. No le asiste la razón.

Por estar estrechamente relacionados entre sí, discutiremos los señalamientos de error en conjunto.

Aunque nuestra jurisdicción cuenta con su propio derecho de familia, lo cierto es que todo lo relacionado a los pleitos de custodia, alimentos, relaciones paternofiliales y la jurisdicción de los tribunales, cuando existe controversia entre residentes de dos estados o territorios diferentes, esta materia se encuentra en campo ocupado por legislación federal. El *Parental Kidnapping Prevention Act,* regula lo concerniente a las controversias sobre jurisdicción interestatal en este tipo de casos sobre menores. A su vez, nuestro más alto foro ha tenido la oportunidad de interpretar dicha legislación y, en consecuencia, ha reiterado que prevalecerá como norma general la jurisdicción del estado de residencia habitual del menor, por entender que es el más propio para dilucidar la controversia. *Cancel Rivera v. González Ruiz, supra,* a la pág. 333. Esta regla general encuentra excepción en varias circunstancias, entre las que se encuentra que otro estado pueda ostentar la jurisdicción (1) por "jurisdicción continua", (2) ningún otro estado aparenta tener jurisdicción o aquel estado que pudiera tener jurisdicción renuncia a su jurisdicción o, (3) ante una situación de emergencia para proteger al menor porque éste, un hermano o uno de sus padres es víctima u objeto de amenazas de maltrato o abuso. 28 US Code sec. 1738A(c)(a-b).

En este sentido, es norma reiterada que, en lo relacionado a la jurisdicción sobre los pleitos de custodia, alimentos y menores, prevalecerá la jurisdicción del estado de residencia habitual. Como esbozamos en el derecho precedente, el requisito principal para que un estado se convierta en el estado de residencia habitual del menor, **este debe haber vivido al menos durante seis (6) meses consecutivos antes de la fecha de inicio de los procedimientos de custodia o fijación de derechos de visita.** 28 USCA sec. 1738A, inciso (b)(4). *Cancel Rivera v. González Ruiz,* supra, a la pág. 333. Por otro lado, para activar la jurisdicción por emergencia para

proteger al menor por haber sido él, un hermano o uno de sus padres víctima u objeto de amenaza de maltrato o abuso, dicha condición de emergencia debe ser expresada en las alegaciones de la demanda de forma clara.

Conforme a lo antedicho y, según consta en el expediente judicial, de los hechos surge que al momento de presentar la demanda el menor acababa de llegar con su madre, la aquí apelante, a Puerto Rico el mismo día, el 3 de febrero de 2025. Surge a su vez que, desde su nacimiento el **20 de febrero de 2020** hasta el día de instar la demanda, el menor ha vivido en el estado de Florida. El que, sin lugar a duda, constituye el estado de residencia habitual del niño, ya que como requiere la legislación federal regente el menor debe haber **vivido al menos durante seis (6) meses consecutivos antes de la fecha de inicio de los procedimientos de custodia.**

Por tanto, la alegación respecto a que la demanda de Puerto Rico se instó primero que la presentada por el señor Pérez Rivera, el 7 de octubre de 2025 en el tribunal de Florida, no produce ningún efecto jurídico o legal que pueda derrotar la jurisdicción del estado de residencial habitual. Esto, máxime cuando la apelante pretende soslayar la jurisdicción del estado de la Florida al incoar la demanda el mismo día que llegó a Puerto Rico. Ello, en contravención al estatuto y su jurisprudencia, esta invita a que se compute el término de los seis (6) meses a partir del 3 de febrero de 2025, día en que presentó la demanda, y no previo al inicio de los procesos como exige la ley.

De otro lado, en cuanto a las alegaciones sobre las amenazas realizadas por el señor Pérez Rivera, en la alegación núm. 8, inciso (e) de la demanda, la señora Rivera Rodríguez solo expresó que **el apelado la intimidaba con quitarle a su hijo si ella solicitaba**

**pensión**.[9] Esto, de forma general, sin especificar cuál es la situación de emergencia que amerite que el tribunal de Puerto Rico adquiera jurisdicción para proteger de manera inmediata al menor, un hermano de este o a ella de un daño o posible maltrato o abuso por parte del apelado.[10] Máxime cuando el señor Pérez Rivera reside en el estado de Florida. De otra parte, fue en la reconsideración de la *Orden* enmendada que la señora Rivera Rodríguez describió, por vez primera, la conducta del apelado como agresiva.

Es decir, entendemos que la alegación dirigida a activar la jurisdicción de emergencia en los tribunales de Puerto Rico para proteger al menor resulta insuficiente. De manera que, se sostiene la jurisdicción de Florida, como estado de residencia habitual del menor. Apuntalamos, además, que no existe impedimento para que estas alegaciones sean levantadas ante el tribunal de Florida, el que retuvo jurisdicción según hemos indicado.

Enfatizamos que cuando un tribunal no tiene jurisdicción, solo puede así declararlo y, en consecuencia, desestimar la demanda. El TPI no puede entrar a dilucidar si las órdenes del tribunal de la Florida son nulas. Por el contrario, el *Parental Kidnapping Prevention Act* ordena a los tribunales a brindarle entera fe y crédito a las órdenes del foro con jurisdicción sobre la materia.

---

[9] SUMAC TPI, Entrada núm. 1, a la pág. 2.

[10] Véase, el alcance de "jurisdicción de emergencia" según definido en *The Uniform Child-Custody Jurisdiction and Enforcement Act,* la cual establece lo siguiente:

> The UCCJA based jurisdiction on a child's close affiliation with a State. Specifically, it established four jurisdictional grounds:
>
> Home State (reserved for the State in which the child has lived for at least 6 months preceding commencement of the action).
>
> Significant connection (exists when a State has substantial evidence about a child as a result of the child's significant connections to that State).
>
> Emergency **(governs situations such as abandonment or abuse that require immediate protective action).**
>
> Vacuum (applies when no other jurisdictional basis exists).

"Sí un estado tenía jurisdicción de forma compatible con esta ley, los demás estados deberán otorgarle entera fe y crédito a ese dictamen". *Collazo Dragoni v. Noceda González*, 198 DPR 476, 483 (2017). Añadimos que no nos convence el planteamiento de la apelante, relativo a que el TPI incurrió en una actuación incorrecta al sostener una conversación telefónica con el magistrado federal que atendía el caso en el estado de la Florida. Esto debido a que, no podemos determinar solo por meras alegaciones, que un juez incide en su proceder al discutir con un magistrado federal un dictamen, que este último emitió, relativo a un pleito que se radicó en Puerto Rico entre las mismas partes para auscultar si posee jurisdicción a tenor con la *Parental Kidnapping Prevention Act*.

De igual forma, como expresó el foro apelado en la *Resolución* resolviendo la *Reconsideración* instada por la apelante, el dictamen posterior emitido luego de haber conversado con el magistrado federal, "tenía el único propósito de dejar sin efecto la prohibición de sacar al menor de la jurisdicción de Puerto Rico, lo que eliminaba cualquier tipo de impedimento para que ésta pudiera actuar, de así entenderlo pertinente".

Por todo lo antes expuesto, nos es forzoso concluir que el foro primario no incurrió en los errores señalados.

Por último, cabe destacar que, contrario a lo que aduce el apelado en su oposición, la denegatoria de la expedición de los recursos discrecionales -como lo es el *certiorari*- no es una ratificación de la *Orden* recurrida. De hecho, nuestro Tribunal Supremo en reiteradas ocasiones ha establecido que la **denegatoria** de un tribunal apelativo a expedir un recurso de ***certiorari*** no implica que el dictamen revisado esté libre de errores o que constituya una adjudicación en los méritos, de manera que no le aplica la doctrina de ley del caso. *Cacho Pérez v. Hatton Gotay*, 195 DPR 1, 12 (2016).

De igual forma, contrario a lo que arguyó la apelante, el desistimiento del caso BY2025CV01082 no es una determinación de nulidad de las *Órdenes* del tribunal de Florida. Como es sabido, el desistimiento de un caso, de igual forma, no constituye a una determinación del caso en sus méritos.

**IV.**

Por los fundamentos previamente expuestos, confirmamos la *Sentencia* apelada.

Notifíquese inmediatamente.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones